EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| San José Realty, S.E., et al.<br><br>    Recurrida<br><br>            v.<br><br>El Fénix de Puerto Rico, et al.<br><br>    Peticionarios | Certiorari<br><br>2002 TSPR 94<br><br>157 DPR \_\_\_\_ |

Número del Caso: CC-1999-480


Fecha: 28/junio/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional V


Juez Ponente:
                    Hon. Charles A. Cordero Peña


Abogados de la Parte Peticionaria:
                    Lcdo. Enrique A. Báez Godínez
                    Lcdo. Jaime Mayol-Bianchi
                    Lcdo. Raúl E. García Sánchez
                    Lcdo. Héctor Manuel Aponte Ortiz

Abogados de la Parte Recurrida:
                    Lcdo. Charles De Mier LeBlanc
                    Lcdo. Giovanni Picorelli


Materia: Daños y Perjuicios




    Este documento constituye un documento oficial del Tribunal Supremo
    que está sujeto a los cambios y correcciones del proceso de
    compilación y publicación oficial de las decisiones del Tribunal.
    Su distribución electrónica se hace como un servicio público a la
    comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


San José Realty. S.E.,
et al

    Recurrida

       vs.                          CC-1999-480   Certiorari


El Fénix de Puerto Rico,
et al

    Peticionarios

Opinión del Tribunal emitida por el Juez Presidente señor Andréu García


San Juan, Puerto Rico, a 28 de junio de 2002

Nos corresponde determinar, bajo las disposiciones de nuestro Código de Seguros, el efecto que produce una orden de liquidación de una compañía aseguradora insolvente sobre un recurso apelativo en el cual una de las partes es dicha aseguradora en calidad de fiadora de un contrato de obra.

I

Allá para diciembre de 1990, el Lic. Rafael Rivera Olivencia –presidente de la Corporación SuperFarmacia San José de Aibonito, y de la Sociedad Especial San José Realty S.E.– contrató

con RYB Engineers & Contractors, Inc., la construcción de un edificio multipisos.  El costo total de la obra ascendía a seiscientos noventa y cinco mil (695,000) dólares. El Fénix de Puerto Rico afianzó el cumplimiento de la obra, el pago de los trabajadores y de los materiales a ser utilizados en ella.

Comment [evr1]:

El 15 de noviembre de 1991, fecha en que debía concluirse sustancialmente la obra, ante el incumplimiento del contratista con lo estipulado, el Lic. Rivera Olivencia  lo declaró en incumplimiento ("default"), mediante notificación al Ing. Torres Félix (presidente de RYB Engineers & Contractors) y a El Fénix.

El 24 de febrero de 1993, el Lic. Rivera Olivencia, su esposa, la sociedad legal de gananciales compuesta por ambos, la sociedad especial San José Realty y la compañía SuperFarmacia, demandaron al Ing. Torres Félix, a RYB Engineers & Contractors, y a El Fénix, por incumplimiento de contrato, cobro de dinero y daños y perjuicios.[1]

Luego de varios incidentes procesales, el Tribunal de Primera Instancia, Sala Superior de Aibonito, emitió sentencia en la cual determinó que los demandados no cumplieron con las obligaciones previamente pactadas. En particular, concluyó que el Ing. Torres Félix incumplió al no finalizar sustancialmente la obra en el plazo estipulado, no haber pagado a los suplidores a pesar de haber recibido el dinero para ello, haber abandonado la obra, y no haber sometido las listas sobre "condiciones generales". Con relación a El Fénix, resolvió que su incumplimiento se basaba en que ésta no remedió las faltas del contratista, ni completó la obra una vez fue notificada del incumplimiento de la constructora; también, afirmó que la fiadora actuó de manera negligente, en forma dolosa y en violación del principio de buena fe contractual, respecto al beneficiario de la fianza prestada.

Por todo lo cual, el tribunal declaró con lugar la demanda, denegó la reconvención y condenó a los demandados a pagar ciento noventa y seis mil (196,000) dólares, más intereses desde la presentación de la demanda, costas, y tres mil (3,000) dólares en concepto de honorarios de abogado.

Los demandados, separadamente, presentaron recursos de apelación ante el Tribunal de Circuito de Apelaciones. El 23 de septiembre de 1997, los recursos fueron consolidados.

Pendiente de resolverse los recursos indicados en el párrafo que antecede, El Fénix advino en estado de insolvencia, por lo cual se inició su procedimiento de liquidación acorde con lo dispuesto en el Capítulo 40 del Código de Seguros. Conforme con dicho Capítulo y la jurisprudencia de este Tribunal, el 16 de septiembre de 1997, el Tribunal de Primera Instancia que decretó su insolvencia designó al Comisionado de Seguros como su liquidador, y ordenó que todas las reclamaciones y pleitos pendientes en contra de esa aseguradora se desestimaran y se remitieran al Foro Administrativo.

> 26. SE ORDENA, en virtud de lo dispuesto en el caso de Calderón, Rosa-Silva & Vargas vs. The Commonwealth Insurance Co., 111 D.P.R. 153 (1981) y en el caso de Intaco Equipment Corp., y otros vs. Arelis Construction y otros, 97 J.T.S 32, y los Artículos 40.120, 40.210, 40.320, 40.330, 40.360, 40.390 y 40.400 del Código de Seguros, que toda reclamación contra El Fénix de Puerto Rico, Compañía de Seguros, se remita al FORO ADMINISTRATIVO del procedimiento de liquidación de El Fénix. Asimismo SE ORDENA que todo pleito pendiente, o que se radique contra El Fénix, sea desestimado y se remita al foro administrativo del procedimiento de liquidación de El Fénix.

También prohibió a toda persona natural o jurídica iniciar reclamación judicial alguna contra El Fénix que estuviera cubierta por el Capítulo 38 del Código de Seguros, y dispuso, la paralización de

---

[1]  El co-demandado Ing. Torres Félix, contestó la demanda y reconvino.

toda acción civil en contra de la fiadora por un plazo de seis meses de acuerdo al Art. 38.180 del Código de Seguros.

Finalmente, dicho tribunal asumió jurisdicción sobre toda materia, persona o reclamación contra El Fénix. Igualmente, ordenó que se notificara a toda persona que tuviera una reclamación contra esa compañía, para que presentara la misma dentro del procedimiento administrativo, en un plazo de seis (6) meses, contados a partir de la fecha de la orden.

El 30 de septiembre de 1997, el Tribunal de Circuito de Apelaciones tomó conocimiento judicial de la mencionada orden  y dispuso:

> (4) La paralización de toda acción civil en contra del asegurado de El Fénix por un plazo de (6) meses, contados a partir de la fecha de la orden del Tribunal (16 de septiembre de 1997), conforme a lo que dispone el Art. 38.180 del Código de Seguros, 26 L.P.R.A. 3819.

> En consecuencia a lo dicho anteriormente, **SE ORDENA** la paralización de los procedimientos en el caso de epígrafe **HASTA EL 17 DE MARZO DE 1998** o hasta que otra cosa disponga este Tribunal. (Énfasis en el original.) Resolución y Orden emitida por el Tribunal de Circuito de Apelaciones de 30 de septiembre de 1997.

Sin embargo, surge del expediente que el Tribunal de Circuito de Apelaciones continuó en realidad con los procedimientos en el caso de autos, así el 26 de febrero de 1998 dictó una resolución denegando unas mociones presentadas por las partes; y asimismo, el 5 de marzo de 1998 volvió a emitir otra resolución por la cual ordenó al Síndico Especial nombrado por el Comisionado de Seguros que se expresare si el caso debía desestimarse y presentarse ante el foro arbitral.[2]

Es oportuno señalar que, el 25 de noviembre de 1997, la parte demandante presentó el formulario de reclamación ante el foro

---

[2] El Comisionado de Seguros compareció ante el Tribunal de Circuito de Apelaciones el 22 de abril de 1998 mediante escrito titulado "Moción en Cumplimiento de orden". En esa moción, se allanaba a lo que determinase el tribunal en cuanto a la solicitud de los codemandados, para que el caso sea desestimado, sin perjuicio de que sea presentado en el foro arbitral.

administrativo de liquidación según lo dispone el Inciso (2) del Art. 40.190 del Código de Seguros, 26 L.P.R.A. § 4019.

Después de otros incidentes procesales en el Tribunal de Circuito de Apelaciones, el 14 de abril de 1999, ese foro dictó una sentencia confirmando la emitida por el Tribunal de Primera Instancia, Sala de Aibonito, en el caso incoado por el Lic. Rivera Olivencia contra el Ing. Torres Félix, RYB Engineers & Contractors y El Fénix.

El Comisionado de Seguros recurre ante nos, señalando como único error que dicho dictamen fue emitido sin jurisdicción.

Por los fundamentos desarrollados a continuación, entendemos que el Comisionado de Seguros tiene razón.

## II

A los diferentes estados que configuran la nación norteamericana, así como a Puerto Rico, le ha sido delegada, por el congreso federal, la facultad para reglamentar la industria de seguros. Ley McCarran-Ferguson, 15 U.S.C. § 1011-1015; *Couch on Insurance* 3d, § 2:1-2:5, 5:36 (1997); Davis J. Howard, *Standing to Sue a Carrier´s killers*, 17 Pepperdine L.Rev. 311, 312-13 (1990).

Utilizando tal potestad, la Asamblea Legislativa de Puerto Rico ha redactado el Código de Seguros siguiendo los lineamientos legislativos diseñados por la Asociación Nacional de Seguros -NAIC-.

A través de Ley Núm. 72 de 17 de agosto de 1991, se enmendaron los antiguos Capítulos 38, 39 y 40 del Código de Seguros a fin de atemperarlos a los nuevos cambios propuestos por NAIC.[3] Dicha ley "amplía la protección para el público consumidor de seguros y otorga

---

[3] En especial el Art. 40, que es el que nos concierne, permaneció inalterado por treinta y tres años, desde la aprobación del Código de Seguros. Sin embargo la nueva experiencia recopilada en diferentes estados que también habían adoptado la legislación modelo de NAIC, dio lugar a nueva legislación acorde a las nuevas tendencias. *Exposición*

mayores poderes a los comisionados de seguros para actuar en el caso de un asegurador que opere con menoscabo al capital o quede insolvente." *Exposición de Motivos de la Ley Núm. 72*, *supra*, Leyes de Puerto Rico, 1991, Parte 1, pág. 320.

Dentro de ese esquema estatutario, el Capítulo 40 provee la reglamentación que guía los procedimientos cuando una aseguradora adviene en estado de insolvencia, para, de ser posible, lograr su rehabilitación, o en caso contrario, iniciar su procedimiento de liquidación. 26 L.P.R.A. 4001.[4]

En especial, dicho Capítulo persigue:

[P]roteger los intereses de los asegurados, reclamantes, acreedores y el público en general con un mínimo de intervención en las prerrogativas normales de dueños y la gerencia de los asegurados mediante:

(a) La temprana detección de cualquier condición de un asegurador potencialmente peligrosa y la pronta aplicación de adecuadas medidas correctivas;

(b) la aplicación de métodos mejorados de rehabilitación de aseguradores utilizando la cooperación y experiencia gerencial de la industria de seguros.

(c) la aclaración de la ley con el propósito de reducir la incertidumbre legal y los litigios y así lograr mayor eficiencia y economía en la liquidación;

(d) la distribución equitativa de cualquier pérdida inevitable;

(e) una disminución de los problemas surgidos en las rehabilitaciones y liquidaciones interestatales por medio de la cooperación entre los estados en los procedimientos de liquidación y extendiendo el alcance de la jurisdicción personal sobre los deudores del asegurador fuera de Puerto Rico, y

---

*de Motivos de la Ley Núm. 72 de 17 de agosto de 1991*, Leyes de Puerto Rico, 1991, Parte 1, págs. 320-321.

[4] Véase: *Couch on Insurance*, 3d, 1997, § 5:6, 5:7, 5:18 ; Kent M. Forney, *Insurer Insolvencies and Guaranty Associations*, 43 Drake L. Rev. 813 (1995).

(f) la reglamentación de los procedimientos de cobro y establecimiento de reglas sustantivas para dichos procedimientos. (Énfasis suplido.) 26 L.P.R.A. § 4001.

El procedimiento de liquidación de una compañía de seguros en estado de insolvencia se inicia a partir de una orden de liquidación emitida por un tribunal competente; en esa orden se designa como liquidador al Comisionado de Seguros, quién toma posesión inmediata de los activos de la compañía y los administra bajo la supervisión de dicho tribunal. 26 L.P.R.A. 4015; *Couch on Insurance*, *op. cit.* §5:37.[5] Los poderes del Comisionado están descritos en nuestro Código de Seguros. 26 L.P.R.A. § 4005, 4015 (1) y 4018.

En cuanto a la naturaleza del procedimiento de liquidación de un asegurador insolvente, hemos enfáticamente expresado que se trata de un procedimiento especial de naturaleza estatutaria, lo cual conlleva que la jurisdicción de los tribunales esté limitada por el estatuto que la rige. Intaco Equipment Corp. v. Arelis Const., 142 D.P.R. 648 (1997). Véase: *Couch on Insurance 3d*, Vol. I, 1997, § 5:40.

El Artículo 40.190 del Código de Seguros, 26 L.P.R.A. § 4019 (1), establece que al emitirse una orden judicial para iniciar los procedimientos para la liquidación de una compañía insolvente, el liquidador tiene la obligación de notificar dicha orden a toda persona que se conozca o tenga, o que razonablemente pueda tener, reclamaciones en contra del asegurador. El mencionado artículo no distingue respecto a la naturaleza u origen de la reclamación (pólizas o contratos de garantía).

---

[5] "The purpose of establishing a system of liquidation through the state is to prevent the waste of assets which had previously been occasioned through receiverships." *Couch on Insurance 3d*, *op. cit*, §5:37, pág. 5-65.

El inciso (2) de dicha sección establece a su vez, que la notificación requerirá que los reclamantes potenciales radiquen sus reclamaciones junto con las correspondientes pruebas, en o antes de la fecha en que el tribunal fije para la radicación de éstas, estableciéndose claramente que el término no excederá del período de seis (6) meses a partir de la fecha de emisión de la orden de liquidación o de cualquier extensión que el Tribunal fije por causa justificada.

Por otra parte, el Art. 40.210 del mismo Código, 26 L.P.R.A. § 4021, esencial en la dilucidación de este caso, establece:

(1) **Al emitirse una orden nombrando un liquidador de un asegurador del país o de un asegurador foráneo domiciliado en Puerto Rico, no se radicará ninguna acción judicial contra el asegurador o contra el liquidador, ni en Puerto Rico ni en cualquier otro lugar, ni se mantendrá ni instará una acción de esa naturaleza luego de emitida la orden.** Los tribunales de Puerto Rico darán entera fe y crédito a interdictos contra la compañía o contra el liquidador o a la continuación de acciones existentes contra el liquidador o la compañía cuando tales interdictos se incluyan en una orden de liquidación emitida de conformidad con disposiciones correspondientes en vigor en otros estados. Cuando, a juicio del liquidador y para la protección del caudal del asegurador, se requiera la intervención del liquidador en una acción que esté pendiente contra el asegurador fuera de Puerto rico, el liquidador podrá intervenir en la misma. El liquidador podrá sufragar del caudal del asegurador los gastos de defensa de cualquier acción en que él intervenga con arreglo a esta sección. (Énfasis suplido.) 26 L.P.R.A. 2021.

A su vez, el Capítulo 38 del mismo código, contiene la siguiente norma aplicable únicamente a los casos en que la Asociación de Seguros de Garantía esté llamada a intervenir.

Todos los procedimientos donde el asegurador insolvente sea parte o venga obligado a defender a una parte ante un tribunal en Puerto Rico, se paralizarán por un período de hasta seis (6) meses y por aquel tiempo adicional que el tribunal conceda, a partir de la fecha en que se determinó la insolvencia o en que se instituyó un procedimiento auxiliar en Puerto Rico, según se describe en la sec. 4049 de este título, lo que sea mayor, **para permitirle a la Asociación una defensa adecuada en todas las causas de acción pendientes.** Con respecto a cualquier reclamación cubierta que surja de una sentencia bajo cualquier decisión, veredicto o determinación basada en la rebeldía del asegurador insolvente o por dejar de defender a un asegurado, la Asociación, bien en su nombre o en nombre de tal asegurado, podrá solicitar que la sentencia, orden, decisión, veredicto o determinación se deje sin efecto por el mismo tribunal

o administrador que emitió tal sentencia, orden, decisión, veredicto o determinación y se le permitirá defender la reclamación en sus méritos. Artículo 38.180, Código de Seguros, 26 L.P.R.A. § 3818.

Para circunscribir el ámbito de aplicación del artículo que antecede, debemos recurrir a los Artículos, 38.010 y 38.030, 26 L.P.R.A. § 3801, 3803. Estos disponen:

Este capítulo comprende las disposiciones **referentes a la Asociación de Garantía de Seguros Misceláneos de Puerto Rico.** (Énfasis suplido.) Artículo 38.010 del Código de Seguros.

Este capítulo se aplicará a toda clase de seguro, excepto reaseguro, **pero no será aplicable a**:

(1) Seguros de vida o incapacidad;

(2) garantía hipotecaria, garantía financiera y otras formas de seguro que ofrezcan protección contra riesgos de inversiones;

(3) **seguro de garantía** excepto el seguro de fidelidad que garantiza la probidad de los empleados públicos;

(4) seguro de garantía de funcionamiento (warranty insurance) o de contratos de servicio;

(5) seguro de título;

(6) seguro marítimo-oceánico;

(7) cualquier transacción o combinación de transacciones entre una persona (incluyendo las afiliadas de ésta) y un asegurador (incluyendo las afiliadas de éste) que envuelva la transferencia de riesgo de crédito o inversiones que no esté acompañada de una transferencia de riesgo de seguro;

(8) cualquier seguro provisto o garantizado por el Gobierno. (Énfasis suplido.) Art. 38.030 Código de Seguros, 26 L.P.R.A. 3803.

Conforme a los mencionados artículos del Capitulo 38 del Código de Seguros, concluimos que el Tribunal de Circuito de Apelaciones cometió un error de derecho al aplicar el Art. 38.018, *supra*, y paralizar por seis meses el presente caso, <u>pues los contratos de fianza no resultan cubiertos por la Asociación de Garantía de Seguros Misceláneos de Puerto Rico</u>.

Por lo tanto, si el Comisionado de Seguros no utilizó su facultad de mantener dicha acción ante el Tribunal de Circuito de Apelaciones[6], el foro apelativo no tenía otra alternativa que atenerse a lo dispuesto por el tribunal de primera instancia que emitió la orden de liquidación contra El Fénix, ya que ese era el único tribunal con jurisdicción sobre la materia.[7] Allí dicho foro ordenó, a tenor con el Art. 40.210, *supra*, que todas las acciones pendientes contra esa compañía <u>debían desestimarse y remitirse al foro administrativo</u>.

Este Tribunal ya se ha expresado en cuanto al alcance del estatuto que hoy nos concierne, Art. 40.210, *supra*, y ha concluido que los pleitos pendientes contra un asegurador en liquidación bajo un contrato de garantía deben ser desestimados y remitidos al foro administrativo del procedimiento de liquidación. <u>Intaco Equipment Corp. v. Arelis Const.</u>, *supra*; <u>Calderón Rosa-Silva & Vargas v. The Commonwealth Insurance Co.</u>, 111 D.P.R. 153 (1981). Estos pronunciamientos son

---

[6] Es el Comisionado de Seguros como liquidador de una aseguradora insolvente quien tiene facultad para decidir si un caso pendiente contra la compañía insolvente debe proseguir su curso ante el foro judicial. En una decisión de tal envergadura debe, principalmente, tenerse en cuenta los mejores intereses de todas las personas afectadas por la situación financiera de la aseguradora insolvente, por el proceso de liquidación y el interés público. Si no se expresa afirmativamente que el caso debe continuar, la acción debe ser desestimada y remitida al foro administrativo.

[7] Couch on Insurance, *op. cit*, § 5:40.

"(1) Ningún procedimiento de cobro será iniciado bajo este capítulo por persona alguna que no sea el Comisionado y ningún tribunal tendrá jurisdicción para aceptar, celebrar vistas o llegar a determinaciones en un procedimiento iniciado por cualquier otra persona.

(2) Ningún tribunal de Puerto Rico tendrá jurisdicción para considerar, celebrar vistas o llegar a determinaciones sobre ninguna acción donde se solicite la disolución, liquidación, rehabilitación, embargo, conservación o administración de un asegurador o donde se solicite un interdicto u orden restrictiva u otro remedio preliminar, incidental o con relación a, tal procedimiento que no sea de conformidad con este capítulo." 26 L.P.R.A. § 4004.

aplicables al caso de autos, especialmente lo resuelto en <u>Intaco</u>, ya que se trataba allí como aquí, del cobro de una fianza en garantía de un contrato de obra. En aquella ocasión determinamos que la reclamación en cobro de dinero presentada ante el Tribunal de Primera Instancia, en contra de una compañía constructora y de la aseguradora que emitió el contrato de fianza de cumplimiento, debía desestimarse <u>sin perjuicio de que fuera presentada nuevamente en el procedimiento administrativo a cargo del Comisionado de Seguros, porque el fin fundamental del Art. 40.210 es que exista un solo foro con jurisdicción que conglomere todas las reclamaciones en contra de la aseguradora insolvente</u>.

No sólo nuestros previos pronunciamientos, sino también la doctrina y la jurisprudencia de otras jurisdicciones –estatales y federales– avalan nuestra posición, esto es, que como regla general, una vez un tribunal declara insolvente a una compañía aseguradora, y comienza un procedimiento de liquidación todas las reclamaciones contra la aseguradora deben consolidarse en un solo foro: el foro administrativo de liquidación.[8] Véase: Michael A. Knoerzer, *Flagging the Obligation: Federal Court's Abstention in Favor of State Rehabilitation and Liquidation Proceeding*, 28 Tort & Ins. L.J 837, 843–52 (1993); <u>American Star Ins. Co. v. Grice</u>, 865 P.2d 507 (1994); <u>Integrity Insurance Co. v. Martin</u>, 769 P.2d 69 (1989); <u>Adviser corporation v. United Republic Life Insurance</u>, 152 F.3d 1277 (1998); <u>State ex rel. Guste v. ALIC Corp.</u>, 595 So. 2d 797 (1992).

> The Uniform Insurers Liquidation Act authorizes the court in which the delinquency proceeding was instituted against the insurer to

---

[8] "Actions pending against the insurer may be abated by dissolution, in which instance, the receiver or other liquidator must be substituted as defendant if the action is to continue. In any case, an action may be maintained against a statutory liquidator of a company after an order for dissolution, and claimants may be remitted to the jurisdiction of incorporation to proceed against the statutory liquidator." *Couch on Insurance* 3d, *op.cit*, § 5:39, págs. 5–73, 5–74.

enjoin all persons from seeking or obtaining preferences, judgments, attachments, or other liens  or the making of any levy against the insurer so long as the court retained jurisdiction. Appleman, *Insurance Law and Practice*, Vol. 19 A, 1982, § 10727, 244.

Es harto conocido que el propósito de la consolidación de toda reclamación contra una aseguradora insolvente, es evitar y prevenir que alguien obtenga algún tipo de preferencia, sentencia, embargo o privilegio, en detrimento del resto de los acreedores; de modo que la liquidación de los activos se realice de una manera justa. *Couch on Insurance 3d*, *op. cit.*, § 5:40. Adviser corporation v. United Republic Life Insurance, supra; American Star Ins. Co. v. Grice, *supra*; Webster v. Superior Court, 758 P.2d 596 (1988); Bank of America v. Quackenbush, 66 Cal.Rptr.2d 81 (1997); State ex rel. Guste v. ALIC Corp., *supra*.

A su vez, la agrupación de todas las reclamaciones  ayuda a que éstas sean adjudicadas ordenada y equitativamente. Y también, sin lugar a dudas, evita la disipación injustificada e innecesaria de los activos de la compañía insolvente que surgirían si el Comisionado de Seguros tuviere que defenderse de acciones aisladas en diferentes foros.

En Munich American Reinsurance Company, et al. v. Crawford, 141 F.3d 585 (5th Cir.1998), la Corte Federal de Apelaciones del Quinto Circuito de Oklahoma consideró una provisión acorde a nuestro Art. 40.210, de Oklahoma Uniform Insurers Liquidation Act, 36 Okla.St. Ann. §§ 1901 *et seq.*, y sobre el  particular determinó:

> In addition to the interest served by orderly adjudication of claims, which we have already discussed, consolidation prevents the unnecessary and wasteful dissipation of the insolvent company's funds that would occur if the receiver had to defend unconnected suits in different forums across the country. Consolidation also eliminates the risk of conflicting rulings, piecemeal litigation of claims, and unequal treatment of claimants, all of which are of particular interest to insurance companies and policyholders, who are often relying on policies with the same or similar provisions. 141 F.3d, 592-93

También en <u>Wolfson v. Mutual Benefit Life Insurance Company</u>, 51 F.3d 141 (1995)[9], la Corte de Apelaciones Federal del Octavo Circuito se abstuvo de ejercer su jurisdicción en un caso en el cual se apelaba una serie de ordenes paralizando y enviando al foro administrativo de liquidación de la aseguradora una acción federal para recobrar unos beneficios de un seguro de vida bajo el Employee Retirement Income Security Act (ERISA). La corte apelativa se abstuvo de ejercer su jurisdicción en deferencia al tribunal estatal en virtud de que la regulación de la industria de seguros hace necesaria la consolidación de las acciones en un solo foro.[10]

> Giving due regard to the strong presumption in favor of exercising federal jurisdiction, we conclude that the district court properly abstained in this case. Even if reduced to judgment, Wolfson's claim against MBL can only be satisfied in the state court insolvency proceeding. Therefore, staying the federal action avoids piecemeal litigation, conserves judicial resources, and furthers the cost-minimizing purposes of rehabilitation by allowing the state court to determine as well as satisfy Wolfson's claim.

Es norma general dentro de varios de los estados que han adoptado la ley modelo de la NAIC, que iniciado un procedimiento de liquidación contra una aseguradora insolvente, ya no podrá radicarse ninguna reclamación en un tribunal y que todas las acciones pendientes en su contra deben derivarse al cause administrativo de liquidación para su adjudicación. Véase: <u>Smith v. Farm & Home Life Insurance Co.</u>, 506 S.E. 2d 104 (1998).

Así, encontramos que en <u>Lumber v. King Construction</u>, 368 A.2d 987 (1976), una compañía aseguradora de New York, que había emitido

---

[9] Este caso ha sido revocado en otros extremos en <u>Quackenbush v. Allstate Insurance Company</u>, 517 U.S. 706, 116 S.Ct. 1712 (1996).

[10] Véase: <u>The Universe Life Insurance Company v. Centennial</u>, 35 F.Supp 2d 1297 (1999); <u>Smith v. Farm & Home Life Ins. Co.</u>, 506 S.E. 2d 104 (1998); <u>Burrhus v. M & S Mach. & Supply Co.</u>, 897 S.W. 2d 871 (1995); <u>Barnhardt Marine Ins., v. New England Internat'l Sur. Of Amer., Inc.</u>, 961 F.2d 529 (5th Cir. 1992); <u>Grimes v. Crown Life Ins. Co.</u>, 857 F.2d

los contratos de fianza de construcción, y que se encontraba dentro de un procedimiento de liquidación en dicho estado, solicitó una orden de paralización o desestimación de los procedimientos en un número de casos consolidados y pendientes en el tribunal de New Jersey, en los cuales era parte. La Corte Superior de New Jersey determinó que dichas acciones debían paralizarse y que los demandantes debían requerir sus remedios ante las Cortes de New York, debido a que carecían de jurisdicción en virtud de haberse iniciado un procedimiento de liquidación en New York. Citando a Motlow v. Southern Holding & Securities Corp., 95 F.2d 721, 725-726, expresó:

> Experience has demonstrated that, in order to secure an economical, efficient and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody, and control of the assets be intrusted to a single management under the supervision of one court. Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. This should be particularly true as to proceeding for the liquidation of insolvent insurance companies, for the reasons adverted to by Mr. Justice Cardozo in Clark v. Williard, 292 U.S. 112, 123, 54 S.Ct. 615, 620, 78 L.Ed.1160. *Lumber* a la pagina 991.

Específicamente en el interrogante que hoy nos atañe, en American Star Ins. Co. v. Grice, *supra*, la Corte Suprema de Washington resolvió que una orden de liquidación y de injunction emitida por un estado con el cual existía reciprocidad bajo la NAIC, y que prohibía toda reclamación judicial en contra de la aseguradora insolvente, abatía la apelación presentada contra ésta.

En State ex rel. Guste v. ALIC Corp., 595 So.2d 797 (1992), la Corte de Apelaciones de Louisiana, resolvió que una vez se comienza un proceso de liquidación de una aseguradora insolvente, **el tribunal que emite la orden de liquidación conserva la jurisdicción sobre toda reclamación en contra de la aseguradora. El Tribunal Apelativo no**

---

699 (10th Cir. 1988); *certiorari* denegado, 489 U.S. 1096 (1989); Levy

**revisará ninguna determinación previa contra la aseguradora, aunque**

**fuera anterior a la institución del procedimiento; sólo el tribunal**

**que emite la orden de liquidación es quien tiene jurisdicción sobre**

**la materia para escuchar cualquier causa en contra de la aseguradora**.

A idéntico resultado había llegado dicho tribunal  en Scott v.

Baton Rouge Bus Co., 118 So.2d 486  (1960).

> As stated above, the Delta Fire & Casualty Company was placed in liquidation by order of the 19th Judicial District Court, after this appeal was lodged. The date on which this order was August 17th, 1959. We cannot further determine the quantum of the judgment which was rendered in the trial court nor on this appeal against Delta Fire & Casualty Company, the latter having been placed in liquidation by authority of the District Court which has complete jurisdiction and said court having issued an injunction which it deemed necessary to prevent the waste of assets, the obtaining of preferences, judgments, attachments or other like liens, while in the possession and control of the Commissioner of Insurance, said injunction being issued under the authority of LSA-R.S. 22:734. Scott, pág. 490.

Sin embargo, ante específicas y limitadas circunstancias, algunas

cortes  estatales  y  federales  han  rehusado  enviar  las  acciones

pendientes ante ellas al foro administrativo de liquidación. Así, la

norma en la jurisdicción federal, edificada a favor de la abstención

en deferencia del tribunal estatal que inicia un procedimiento de

liquidación[11], se resumen en:

> Since the Supreme Court's decision in *NOPSI*, it seems that a party seeking to dismiss an action on *Burford* abstention grounds must not only demonstrate the existence of a specialized state proceeding

v. Lewis, 635 F.2d 960 (2d Cir. 1980).

[11] Los siguientes casos son claros ejemplos de abstención  dentro de la jurisdicción federal en deferencia a los tribunales estatales cuando se ha iniciado un procedimiento de liquidación o rehabilitación en contra de una aseguradora: Burford v. Sun Oil Co., 319 U.S. 315 (1943); New Orleans Public Service, Inc. v. Counsel of City of New Orleans (NOPSI), 491 U.S. 350 (1989); Law Enforcement Insurance Co. v. Corcoran, 807 F.2d 38 (2d Cir. 1986), cert. denied, 481 U.S. 1017 (1987); Grimes v. Crown Life Insurance Co., 857 F.2d 699 (10th Cir. 1988), cert. denied, 489 U.S. 1096 (1989); University Maryland v. Peat Marwick Main & Co., 736 F. Supp. 643 (E.D.Pa. 1990); Melabn v. Pennock Insurance Co.,965 F.2d 1497 (1992); General Glass Indus. Corp. v. Monsour Med. Found, 973 F.2d 197 (3d Cir. 1992);  Davister Corporation v. United Republic. Life Insurance Co., *supra*, Fragoso v. Lopez, 991 F.2d 878 (1993); Riley v. Simmons, 45 F.3d 764 (3d Cir.1995).

and the potential for its disruption, but also that the federal inquiry would likely frustrate or undermine those proceeding.

Several, but not all, courts have also indicated that the presence of the liquidator or rehabilitator as a party to the federal action is a condition precedent to abstention. Moreover, the testimony of the liquidator or rehabilitator or of the insolvent insurer, while not necessarily decisive, may have a significant impact on a court's decision to abstain. A federal court, in determining whether to abstain, will consider the liquidator's opinion, not only with respect to whether the federal action will frustrate the subject rehabilitation or liquidation proceeding, but also the question of the impact of the federal action on whether and how insurance companies do business in the state in the years ahead. Michael A. Knoerzwer, *op. cit*, pag. 853.

Más limitadas son aún las excepciones encontradas en la jurisprudencia estatal, y fundamentalmente, éstas se apoyan en que la acción judicial entablada y su continuación en la corte que entendió en el pleito, de ninguna manera interfiere con el procedimiento de liquidación, ni con las facultades del liquidador; ni tampoco, la sentencia que en su día recaiga afectará los activos de la aseguradora insolvente. Así, en <u>Webster v. Superior Court</u>, 758 P.2d 596, 46 Cal.3d 338 (1988), se le permitió al perjudicado continuar su acción personal de daños contra la aseguradora de la compañía aseguradora (causante del alegado daño) declarada insolvente. La Corte Suprema de California resolvió que el reclamante debía hacer una elección vinculante entre intentar recobrar sobre los activos de la compañía insolvente o proceder contra la aseguradora de ésta. Si elegía recobrar solamente contra la aseguradora solvente, se le debía permitir mantener una acción civil independiente por los daños. Sin embargo si elegía intentar recobrar en todo o en parte sobre los activos de la aseguradora insolvente su acción debía quedar paralizada, y su reclamación debía ser resuelta por el Comisionado de Seguros dentro del procedimiento de liquidación. Como en esa situación, los peticionarios ofrecieron estipular que no intentarían recobrar de los activos de la compañía

insolvente, la Corte determinó que la acción podía continuar en el tribunal.

Igual norma excepcional seguimos en Ruíz García v. New York Department Stores, 146 D.P.R. 353 (1998), al expresar lo siguiente:

> Finalmente, debe destacarse que en las disposiciones pertinentes del Código de Seguros de Puerto Rico, relativas a la Asociación de Garantía de Seguros Misceláneos de Puerto Rico, también se contempla que existirán acciones judiciales como las del caso de autos.  La Asociación aludida fue creada por ley en 1991, para proveer un modo de pago para determinadas reclamaciones cubiertas por contratos de seguros antes de la determinación de insolvencia del asegurador.  En lo relativo a esta Asociación, el Artículo 38.180 del Código de Seguros provee para la suspensión temporera de cualquier procedimiento en el cual el asegurador insolvente sea parte o venga obligado a defender a una parte ante un tribunal de Puerto Rico.  Nótese que no se trata de una prohibición de acciones judiciales, sino de una suspensión por un corto período de tiempo.  El propósito de dicha suspensión es precisamente "para permitirle a la Asociación una defensa adecuada en todas las causas de acción pertinentes."

Es de observar que dicha excepción encuentra su razón de ser en las disposiciones del Capítulo 38 del Código de Seguros referentes a la Asociación de Garantía de Seguros Misceláneos, Arts. 38.010 a 38.190, 26 L.P.R.A., secs. 3801 a 3819, cuyo propósito, según ya sentamos, **"es crear un mecanismo para el pago de reclamaciones cubiertas bajo determinadas pólizas de seguro** con el fin de evitar excesivas dilaciones en el pago, evitar pérdidas financieras a los reclamantes o tenedores de pólizas como resultado de la insolvencia de un asegurador, ayudar a detectar y prevenir la insolvencia de aseguradores y establecer una asociación que distribuya el costo de esta protección entre los aseguradores mediante la imposición de derramas". (Énfasis suplido.) Art. 38.020 del Código de Seguros.

Al igual que en Webster v. Superior Court, supra, la Asociación de Garantía de Seguros Misceláneos opera como una aseguradora de la aseguradora insolvente, por lo que la continuación del pleito en contra de New York Department Stores, asegurada de la aseguradora insolvente

en el caso de <u>Ruiz García</u>, supra, en nada interfería con el procedimiento de liquidación de ésta, ni con las facultades del Comisionado [liquidador]; ni tampoco la sentencia que recayera en su día habría de afectar los activos de dicha aseguradora insolvente. Más esta excepción no está presente en ese caso. Recuérdese que, según hemos visto anteriormente, las disposiciones referentes a la Asociación de Garantía de Seguros Misceláneos <u>no son aplicables al seguro de garantía</u>, dentro de cuya categoría <u>se encuentra el contrato de fianza</u>. Véase Art. 38.030 del Código de Seguros, 26 L.P.R.A. 3803, supra.

Dada estas pocas circunstancias y sus específicas razones para mantener una causa de acción en un tribunal judicial cuando se inicia un procedimiento de liquidación de una compañía de seguros, entendemos que en este caso no existe justificación alguna, para exceptuarlo de las disposiciones del Art. 40.210 del Código de Seguros, supra.

III

Luego de una orden de liquidación de una aseguradora insolvente, ninguna acción puede comenzar o continuarse en ninguna corte del estado en cuestión o entre aquellos estados donde exista reciprocidad. Véase: <u>Commonwealth v. Central Penn National Bank</u>, 375 A.2d 874 (1977). "The corporate existence of an insurance company terminated on the entry of an order of liquidation, and pending actions against the company, as well as those thereafter instituted against it, abated." Appleman, *op. cit.*, Vol. 19 A, § 10727, 241. Es imposible para el apelante perfeccionar una apelación en este supuesto, lo mismo sucede ante una orden de paralización en el tribunal federal dentro de un procedimiento de quiebra. <u>Burrhus v. M & S Mach. & Supply Co.</u>, *supra*.

El tribunal que ordena la liquidación de la aseguradora insolvente es quien retiene jurisdicción sobre todas las  acciones en contra la

aseguradora, incluso las que existen con anterioridad a la orden.

Integrity Ins. Co. v. Martin, 769 P.2d 69 (Okla. 1989).

Para resolver a cabalidad este recurso, estimamos importante señalar que el Código de Seguros establece respecto a los contratos de fianza de cumplimiento otorgados por una aseguradora, lo siguiente:

> Todo seguro de garantía que garantice el cumplimiento de contratos, sea una fianza civil o criminal o que garantice cualquier tipo de obligación obligará **solidariamente** al asegurador y su principal, pero sujeto a los términos de prescripción y caducidad. (Énfasis suplido.) 26 L.P.R.A. § 2204.

> El asegurador de garantía que se obligare de acuerdo a lo dispuesto en la sec. 2204 de este título vendrá obligado a satisfacer la deuda de su principal a requerimiento del acreedor, luego de verificar dentro de un término de noventa (90) días la existencia, liquidez y exigibilidad de la reclamación. Si dentro de ese término el asegurador no satisface la reclamación por justa causa incurrirá en una violación a la sec. 2716a de este título. (Énfasis suplido.) 26 L.P.R.A. 2205.

Y esto no es todo. El Fénix se responsabilizó solidariamente con el contratista a realizar el edificio multipisos. "Performance Bond" (SNR8888) suscrito entre el Ing. Luis B. Torres Félix y El Fénix.

> KNOW ALL MEN BY THESE PRESENTS: that Ing. Luis B. Torres Félix as principal , hereinafter called contractor and, El Fénix de Puerto Rico/Compañía de Seguros as Surety, hereinafter called Surety, are held and firmly bound unto Lic. Rafael Rivera Olivencia as Obligee, hereinafter called Owner, in the amount of $695,000.00 for the payment whereof Contractor and Surety bind themselves, their here executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

Ante la existencia indiscutible del vínculo de solidaridad entre El Fénix, el Ing. Luis B. Torres Félix y RYB Engineers & Contractors, Inc., es forzoso concluir que no pueden dividirse las reclamaciones entre distintos foros.

A la vez es trascendente destacar que nuestro Código de Seguros tampoco distingue entre el contrato de seguros (póliza) y el contrato de fianza a los fines del Art. 40.210 de dicho Código. Y como ya hemos explicado, esta disposición persigue que los procedimientos de liquidación de una aseguradora se conduzcan en forma expedita, justa

y ordenada ante el Comisionado de Seguros, quien está a cargo de la liquidación.[12] Tampoco en otras jurisdicciones se han distinguido entre ambos tipos de contratos a los fines del procedimiento de liquidación, y ante la misma situación que nos atañe hoy, han remitido al procedimiento de liquidación la acción en la cual una de las partes era una aseguradora insolvente que había expedido las fianzas de cumplimiento en la construcción de una obra. Lumber v. King Construction, 368 A. 2d 987 (1976).

Tampoco las circunstancias de este caso nos conducen a hacer una excepción a la norma. Como es sabido el fiador solidario no puede oponer contra el acreedor el beneficio de excusión sobre los bienes del fiado. Inc. 2, Art. 1730 del Código Civil, 31 L.P.R.A. § 4892; Carr v. Nones, 98 D.P.R. 236 (1970); Colón v. Porto Rican & American Insurance Co., 63 D.P.R. 344 (1944). En sus relaciones con el acreedor, un fiador solidario es un principal pagador y como tal tiene la obligación de cumplir el contrato íntegra y totalmente desde el momento en que el fiado deja de cumplir lo convenido. Drug Company v. Susoni, 43 D.P.R. 772 (1943); Mansiones P. Gardens. Inc. v. Scotiabank, 114 D.P.R 513, 519 (1983).

Por todo ello, esta acción debe enviarse al foro administrativo, aún en etapa apelativa; pues, en definitiva, afectará adversa e irremediablemente sobre el patrimonio de El Fénix, el procedimiento de liquidación y las facultades del Comisionado; en fin todo lo que se trata de proteger a través del estatuto en cuestión.

Tampoco podemos perder de vista que el Comisionado de Seguros, como liquidador, tiene la obligación de conocer e inventariar todos

---

[12] *Couch on Insurance 3d, op.cit.*, § 5:37; Carris v. Carpenter, 33 Cal. App. 2d 649, 92 P.2d 688 (1939); State v. Preferred, 115 So. 2d 384

los activos y todas las obligaciones de la compañía aseguradora de que se trate; liquidar los primeros para atender tales obligaciones de manera integral. 26 L.P.R.A. § 4022, 4031.[13]  O sea, que el liquidador debe tener una visión clara e integral de todas las obligaciones por las cuales habrá de responder el activo de la empresa.[14] Si se distingue entre seguros y fianzas mal puede el liquidador, en este caso, el Comisionado, realizar la labor que el Código le impone, ya que la fragmentación de las acciones judiciales y administrativas impediría tener una idea clara y concreta del estado de los asuntos en liquidación.

El propósito claro de la ley es que todo proceso de liquidación sea atendido por una sola entidad con visión integral de toda la problemática respecto a la capacidad financiera (potencial económico para el pago de las obligaciones) de la aseguradora de que se trate.[15] Por otro lado, el contrato de seguros y el contratos de fianza gozan de una misma naturaleza: ambos son contratos aleatorios no principales; esto es, son de carácter accesorio[16], por lo cual es necesario que el

---

(1959); Comercial Nat´l Bank v. Superior Court, 17 Cal. Rptr. 2d 884 (1993); State ex rel. Guste v. ALIC Corp, *supra*.

[13] El procedimiento de liquidación de quiebras y el proceso de liquidación de una compañía de seguros insolvente son fundamentalmente similares ya que están diseñados para liquidar más que para reorganizar. Los objetivos de estos procedimientos van encaminados a ordenar los activos del deudor para redistribuirlos entre los acreedores de acuerdo a las reglas de prioridades establecidas en los respectivos estatutos. In re Advanced Cellular Systems, 235 B.R. 713 (1999).

[14] *Couch on Insurance 3d*, *op.cit.*, § 6:5, 6:8.

[15] "No se radicará ninguna acción judicial contra el asegurador o liquidador ni se mantendrán acciones de esa naturaleza luego de emitida la orden de liquidación. Esto es cónsone con la decisión de nuestro Tribunal Supremo en *Calderón, Rosa Silva, Vargas vs. Commonwealth Insurance Co.*, 111 D.P.R. 153 (1981) donde el Tribunal indica que toda cobro de dicha reclamación ante los tribunales de justicia." Informe de la Cámara de Representantes de 4 de junio de 1991.

Comisionado sea quien disponga en primera instancia de las reclamaciones contra la aseguradora y su asegurado o fiado, bien bajo la póliza de seguros o bajo un contrato de fianza, a los fines de que pueda decidir la forma en que serán pagadas aquellas reclamaciones que considere válidas, en la proporción que determine, tomando en consideración el todo de la empresa ("activos v. pasivos"), hacer las reservas necesarias para el pago de las mismas. 26 L.P.R.A. § 4032, 4036, 4039-43. Así se recoge en la exposición de motivos de la Ley que nos ocupa, así se ha reconocido en todas las jurisdicciones que han adoptado el Código Uniforme de Seguros, y así lo reconocimos en el caso de Intaco, hace apenas cuatro años.[17]

Aún en ausencia del mencionado estatuto y de la jurisprudencia aludida, cualquier proceso de liquidación de una empresa insolvente, esto es, cuando sus activos no alcanzan a cubrir sus obligaciones, requiere de un trámite como el descrito anteriormente por imperativo del derecho común (Código Civil) y las mejores prácticas contables que imperan en este país.[18]

---

[16] "Suretyship, guaranty, indemnity and, less often, classic insurance can all be viewed as an undertaking by one party to assure or to indemnify another against a possible default in the performance of a legal duty owed by a third party...The distinction between guaranty and surety itself is elusive, to say the least." *Couch on Insurance 3d*, *op. cit.*, § 1:18.

"The nature of the risk assumed by the party in the role of 'insurer' is a major distinction between insurance and the arrangements of guaranty and surety. As a broad general rule, the risk can be characterized in terms of the degree to which the contingency is within the control of one of the parties. In the classic instance of insurer, the risk is controlled only by chance or nature. In guaranty and surety arrangements, the risk tends to be wholly or partially in the control of one of the three parties." *Ibid*.

[17] Véanse: *Exposición de Motivos de la Ley Núm.* 72 de 17 de agosto de 1991, *supra*; Integrity Ins. Co. v. Martin, 769 P.2d 69 (Nev. 1989); American Star Ins. Co. v. Grice, 865 P. 2d 597 (1994); Scott v. Baton Rouge Bus Company, 118 So.2d 486 (1960); Burrhus v. M & S Mach & Supply Co., 897 S.W.2d 871 (Tex.App.-San Antonio 1995).

De permitirse la continuación de la acción respecto al otro demandado, surgirían los siguientes resultados indeseados, por ser contrarios a la política pública en que se asienta la legislación comentada: (a) siendo subsidiaria, aunque solidaria, la responsabilidad de la fiadora, de resultar victoriosa la parte reclamante en contra del fiado, tendrá aquella que repetir contra la fiadora en caso de que no pueda cobrar del fiado (lo cual es muy probable en los casos en que la reclamación sea en cobro de dinero por materialistas, suplidores u obreros, ya que frecuentemente el fiado resulta insolvente); (b) en cuyo caso siempre tendrá el reclamante que recurrir al Comisionado para tratar de obtener el pago total o parcial de la misma con el potencial peligro de que la decisión del Comisionado conflija con la determinación del Foro  Judicial; (c) los dos supuestos anteriores exponen, tanto a la parte reclamante como al fiado, a múltiples procedimientos a los fines de que cada cual pueda hacer valer sus derechos contractuales mediante el fraccionamiento de procedimientos en foros diversos, con el consiguiente efecto de: (d) que tengan que incurrir en más gastos y (e) dilate aún más, innecesariamente, el cobro o recobro de lo debido; (f) lo cual, a su vez, conlleva al resultado de causar demora en la liquidación e incertidumbre respecto al efecto potencial en los activos de la aseguradora insolvente en liquidación al desconocerse si finalmente habrá de recaer una decisión final y firme en contra del fiado y el monto de la misma, antes de que pueda el Comisionado liquidador responder al reclamante.

---

[18]  "[T]he liquidation process would be greatly impeded by subjecting in to two authorities. The experience of our own federal bankruptcy courts evidences the importance of consolidating all of the assets of an insolvent company and gathering all those who have claims against those assets in a single forum." Levy v. Lewis, 635 F.2d 960, 964 (2d Cir. 1980).

Son, precisamente los anteriores efectos adversos los que pretenden evitarse a los fines de que el Comisionado liquidador realice una liquidación expedita, justa y ordenada, en beneficio de los fiados, reclamantes y la propia aseguradora insolvente y/o sus accionistas o dueños, la razón por la cual la ley priva de jurisdicción a los tribunales en estos casos, aún para conocer de una acción en contra del fiado únicamente, y ordena que todas las reclamaciones, tanto contra éstos como contra la aseguradora tengan que ser referidas al cause administrativo. La necesidad de que exista un solo foro para dilucidad las reclamaciones dentro de este tipo de procedimiento es imperativa.

IV

No obstante lo expresado anteriormente, la avanzada etapa procesal en que se encuentra el presente caso, nos obliga a reconocer la facultad del tribunal con jurisdicción de acuerdo al Art. 40.040 del Código de Seguros, 26 L.P.R.A. § 4004, previa audiencia al Comisionado de Seguros, para autorizar, a instancia de cualquiera de las partes, la continuación de la acción en el foro apelativo o ante cualquier otro foro judicial; siempre y cuando se demuestre que la continuación de la misma resulta en el mejor interés de la aseguradora y/o del reclamante, y que de permitirse, ello no contraviene los fines públicos perseguidos por el estatuto de marras. Webster v. Superior Court, *supra*; Bank of America v. Quakenbush, 66 Cal.Rptr.2d 81 (1997).[19]

---

[19] Llegamos a esta conclusión no sólo persuadidos de la jurisprudencia, sino también en virtud del inciso (4) del Art. 40.040 y del Art. 40.050, 26 L.P.R.A. §§ 4004 y 4005, que respectivamente disponen:

"(4) Si el tribunal, mediante moción de cualquiera de las partes, determina que una acción debiera, como cuestión de justicia sustancial, ventilarse en un foro fuera de Puerto rico, podrá emitir una orden correspondiente para paralizar los procedimientos sobre la acción en Puerto Rico."

No contamos con los elementos decisionales indispensables, ni estamos requeridos a hacer una determinación de tal índole en este momento, pero nada impide que se solicite autorización a la Sala competente del Tribunal de Primera Instancia con jurisdicción para que este caso prosiga su curso judicial en lugar de ser remitido al cauce administrativo

Por entender que la sentencia dictada por el Tribunal de Circuito de Apelaciones de 14 de abril de 1999, ha sido emitida sin jurisdicción sobre la materia, la revocamos para dejarla sin efecto.


                              JOSE A. ANDREU GARCIA
                              Juez Presidente

---

"(1) Un administrador nombrado en un procedimiento con arreglo a este Capítulo podrá solicitar en cualquier momento, y cualquier tribunal con jurisdicción podrá conceder, aquellas órdenes de entredicho provisional, interdictos preeliminares y permanentes, así como cualesquiera otras órdenes que fueren necesarias y pertinentes para evitar:
....
(f) la radicación o ventilación de cualesquiera acciones o procedimientos;
...
(k) cualquier amenaza o intento de llevar una acción, que pueda menoscabar el valor del activo del asegurador o poner en peligro los derechos de los tenedores de pólizas, acreedores o accionistas o la administración de cualquier procedimiento con arreglo a este Capítulo."

Evidentemente que si el tribunal de primera instancia con jurisdicción sobre el procedimiento de rehabilitación o liquidación tiene facultad para prevenir que una acción continúe también la debe tener para permitir que una acción prosiga, siempre que no afecte el procedimiento de liquidación. Véase también: Bilden v. United Equitable Insurance Co., 921 F.2d 822 (1990).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

San José Realty, S.E.,
et al

    Recurrida

       vs.                              CC-1999-480   Certiorari

El Fénix de Puerto Rico,
et al

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 28 de junio de 2002

       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se deja sin efecto la sentencia dictada por el Tribunal de Circuito de Apelaciones el 14 de abril de 1999.

    Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Rebollo López emitió Opinión Concurrente y Disidente.  El Juez Asociado señor Rivera Pérez emitió Opinión Disidente a la cual se une el Juez Asociado señor Corrada del Río.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

San José Realty, S.E., et
als.

    Recurrido

       vs.                CC-1999-480      CERTIORARI

El Fénix de Puerto Rico,
et als.

    Peticionario

OPINIÓN CONCURRENTE Y DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 28 de junio de 2002

En el día de hoy, una mayoría de los integrantes del Tribunal, revoca una sentencia emitida por el Tribunal de Circuito de Apelaciones, mediante la cual el foro apelativo intermedio había confirmado un dictamen emitido por el Tribunal de Primera Instancia.

Mediante tal dictamen, el foro primario había impuesto responsabilidad por incumplimiento de contrato, abandono de obra, cobro de dinero y daños y perjuicios, contra una compañía de construcción, el ingeniero dueño de ésta y contra la compañía de seguros que expidió los contratos de fianza para garantizar la ejecución y

terminación de dicha obra.[20] Dicha compañía de seguros fue declarada insolvente, ordenándose su liquidación al amparo de las disposiciones del Capítulo 40 del Código de Seguros de Puerto Rico[21], cuando ya el referido tribunal apelativo intermedio tenía ante su consideración la revisión de la sentencia emitida por el foro de instancia, esto es, antes de resolverse y emitirse sentencia en el caso.

La Mayoría revoca la sentencia dictada por el Tribunal de Circuito de Apelaciones al entender que dicho foro apelativo intermedio no tenía, al emitir la misma, "jurisdicción sobre la materia" y, por consiguiente, remite la totalidad de la controversia planteada al foro administrativo. No podemos suscribir, en su totalidad, la referida sentencia. Veamos por qué.

I

El Tribunal, al interpretar el derecho aplicable al caso de autos, cataloga y trata, de manera similar, la figura del contrato de seguros y la del contrato de fianza, y de esa forma trata, indistintamente, al fiado como asegurado y a la fiadora como aseguradora. Ciertamente, la compañía de seguros aquí declarada insolvente tenía, como asegurador autorizado a hacer negocios en Puerto Rico, la facultad de expedir fianzas como las expedidas a favor del contratista demandado.[22]

---

[20] La parte demandante, San José Realty, había suscrito un contrato con la codemandada RYB Engineers & Contractors, Inc., representado por su presidente, el Ing. Torres Félix, para la construcción de un edificio multipisos. El Fénix de Puerto Rico expidió las fianzas correspondientes para garantizar el cumplimiento de la obra y el pago de la labor y materiales, "Performance Bond and Labor and Material Bond".

Debido al alegado abandono de la obra de construcción por parte del contratista y la compañía de construcción, se instó la demanda de referencia.

[21] 26 L.P.R.A. sec. 4001, *et.seq.*

[22] Véase, Artículo 4.090, 26 L.P.R.A. sec. 409, sobre la definición del seguro de garantía.

Ello <u>no</u> significa, sin embargo, que dicha compañía estaba, a esos fines, actuando como aseguradora del contratista demandado, <u>ni</u> que éste fuere su asegurado. La referida compañía actuaba como <u>fiadora</u> de éste último, y era responsable del cumplimiento de la obligación contractual ante el acreedor --aquí, el dueño de la obra-- <u>siempre y cuando el fiado-deudor incumpliera con la obligación que asumió originalmente para con aquél.</u>

En el caso de autos <u>no</u> estamos ante la figura de un contrato de seguros mediante el cual, por ejemplo, una compañía aseguradora se obliga a indemnizar a otro o a pagarle a éste un beneficio específico o determinable, al producirse un suceso previsto en el mismo.[23] En términos generales, y como es sabido, "un contrato de seguro es un acuerdo por escrito, denominado póliza, por virtud del cual una parte, conocida como el asegurador, a cambio de una prima adecuada al riesgo como causa del contrato, ...se obliga a indemnizar a otra parte, conocida como el asegurado, el valor real en efectivo del interés asegurable de la cosa u objeto del seguro... Mediante el acuerdo aludido, el asegurador también pudiera, de así ser convenido, quedar obligado a responderle --seguro de responsabilidad-- a terceros por aquella obligación económica que el asegurado venga legalmente obligado a pagar por razón de su responsabilidad legal..." Rolando Cruz, <u>Derecho de Seguros</u>, ante, a la pág. 3.

En el presente caso nos enfrentamos a <u>la figura del contrato de fianza</u>. Como es sabido, el Artículo 1721 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4871, establece que:

> Por la fianza se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste.

---

[23] Véase Artículo 1.020 del Código de Seguros, 26 L.P.R.A. sec. 102, definición del contrato de seguros; Rolando Cruz, <u>Derecho de Seguros</u>, 1ra ed., Publicaciones JTS, 1999.

Si el fiador se obligare solidariamente con el deudor principal, se observará lo dispuesto en las secs. 3101 a 3112 de este título. (Subrayado nuestro).

Nos señala J. Puig Brutau que "[l]a fianza implica la existencia de una obligación principal y de una obligación accesoria pactada para asegurar el cumplimiento de la primera. La obligación principal es la que existe entre acreedor y deudor. Este deudor es el 'otro' [...] por el cumplimiento de cuya obligación el fiador se ha obligado hacia el acreedor. La fianza aparece así como una obligación convenida entre acreedor y fiador para asegurar o garantizar el pago o cumplimiento de una obligación debida por un 'tercero' [...]". Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1982, Tomo 2, Vol. 2, págs. 587-588. (Énfasis suplido.)

Puig Peña define la fianza como "aquel contrato por cuya virtud una persona (denominada fiador) se obliga, frente al acreedor de una determinada obligación, a garantizar el cumplimiento de la misma, para el caso de que éste no se reintegre del deudor principal". Professional Underwriters Ins. Co. v. Dist. Automotriz, 121 D.P.R. 536, 542 (1988).[24]

II

En materia de contratos de construcción, convenidos entre el dueño de una obra y el contratista que se encarga de la construcción y la terminación de un proyecto, la exigencia al contratista, por parte del dueño de la obra, de que suscriba, a través de una compañía fiadora,

---

[24] Véase, además, F. Puig Peña, Compendio de Derecho Civil Español, 3ra ed., Pamplona, Ed. Aranzadi, 1976, T. IV, pág. 336; L. Díez-Picazo, Fundamentos del Derecho Civil Patrimonial, Madrid, Ed. Tecnos, 1979, Vol. 1, pág. 584; J. Puig Brutau, Fundamentos del Derecho Civil, 2da ed. rev., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, pág. 588; V. Guilarte Zapatero, Comentarios al Código Civil y Compilaciones Forales (Dirigidos por Manuel Albaladejo Jaén, Ed. Rev. Der. Privado, 1980, T. XXIII.)

fianzas de cumplimiento o las llamadas "Performance Bonds and Labor and Materials Bonds", es  práctica común.

El hecho de que, como en el presente caso, una compañía aseguradora haya sido el ente que haya expedido dicha fianza, no significa que sus efectos no se dejen de regir estrictamente por las disposiciones del Código Civil referentes a la figura de la fianza. Consecuencia de ello, lo es nuestra posición --distinta a la asumida por la Mayoría-- a los efectos de que toda reclamación contra el contratista y principal deudor de la obligación contraída, puede y debe seguir su curso ante los foros judiciales pertinentes, aun cuando la compañía aseguradora que expidió la fianza de cumplimiento haya sido declarada insolvente. Veamos porqué.

El Artículo 4.090 del Código de Seguros, 26 L.P.R.A. sec. 409, define el seguro de garantía como uno que incluye, entre otras obligaciones, la de "garantizar el cumplimiento de contrato y garantizar y otorgar fianzas, obligaciones y contratos de fianza."

El Artículo 38.030 del referido Código, 26 L.P.R.A. sec. 3803 (3) excluye del concepto de "reclamación cubierta"[25], toda reclamación amparada en seguros de garantía. Dicha sección claramente establece que:

> Este Capítulo se aplicará a toda clase de seguro, excepto reaseguro, pero no será aplicable a:
> (1)...
> (2)...
> (3) seguro de garantía excepto el seguro de fidelidad que garantiza la probidad de empleados públicos;
> (4)...
> (5)...
> (6)...
> (7)...
> (8)...(Énfasis nuestro.)

---

[25] Entiéndase "reclamaciones cubiertas" como aquellas a ser ajustadas y pagadas por la Asociación de Garantía de Seguro Misceláneos de Puerto Rico.

En atención a la antes mencionada disposición, no debe haber duda sobre el hecho de que, el Artículo 38.180, 26 L.P.R.A. sec. 3818, --relativo a la suspensión temporera de procedimientos judiciales contra un asegurado de una aseguradora declarada insolvente-- no es aplicable a los seguros de garantía expedidos por una compañía de seguros --en este caso, El Fénix-- a favor del contratista demandado. Siendo los contratos de fianza expedidos por El Fénix de Puerto Rico a favor del Ing. Torres Félix y de RYB Engineers and Contractors, seguros para garantizar la terminación del edificio multipisos y el pago de labor y materiales que surgiera de la construcción del mismo, ninguna de las disposiciones del Capítulo 38, ante, le son aplicables al presente caso, en específico el Artículo 38.180, ante.

Según se desprende de su propio texto, es precisamente dicho Artículo 38.180 el que dispone la paralización temporera de procedimientos judiciales en relación a una parte asegurada --no fiada-- que es demandada en un pleito civil por una reclamación cubierta por su aseguradora.[26] Por lo que, en vista de su no aplicación a los hechos del caso de autos, no procede extender la paralización de la presente reclamación, cuando menos, con respecto al Ing. Torres Félix y a la compañía de construcción que éste preside.

Es preciso señalar que, según consta claramente en la Orden de Liquidación emitida contra El Fénix de Puerto Rico por el foro primario, y a la cual hace referencia la Mayoría, no se desprende intención alguna de paralizar los procedimientos en el caso de autos contra el fiado. Dicha orden dispuso, de manera general, que se "prohíbe a toda persona natural o jurídica iniciar pleito alguno contra un

---

[26] Las disposiciones del Capítulo 40 versan sobre el procedimiento a seguir, o más bien sobre la paralización de los procesos judiciales con respecto a reclamaciones contra la aseguradora exclusivamente, y no con respecto a un asegurado de la misma.

asegurado de El Fénix en una reclamación cubierta por el Capítulo 38 del Código de Seguros, 26 L.P.R.A. sec. 3801, et seq., y se dispone la paralización de toda acción civil en contra del asegurado por un plazo de seis (6) meses, contado a partir de la fecha de esta Orden, conforme a lo que dispone el Artículo 38.180 del Código de Seguros."[27]

Ciertamente, era el deber del tribunal de primera instancia, al emitir dicha orden, disponer sobre la paralización de procedimientos judiciales referentes a contratos de seguros cubiertos por el Capítulo 38 del referido Código. Ahora bien, ello no significa que el Tribunal de Circuito de Apelaciones, mediante la Resolución y Orden de 30 de septiembre de 1997 tomando conocimiento judicial de la insolvencia de El Fénix, ni la Mayoría de este Tribunal tienen la facultad para aplicar dicha prohibición general a los hechos específicos del caso ante nuestra consideración.

No procedía que el Tribunal de Circuito de Apelaciones ordenara la paralización de la presente acción civil con respecto al Ing. Torres Félix y a la compañía de construcción que éste presidía, ambos codemandados afianzados por El Fénix.[28] El Tribunal de Circuito de Apelaciones ciertamente tenía jurisdicción para entender en dichas reclamaciones y dictar la sentencia correspondiente contra los referidos codemandados, entiéndase el Ing. Torres Félix y la compañía de construcción RYB Engineers & Contractors, en su carácter de contratistas principales encargados del desarrollo y terminación de la obra de construcción pactada en el contrato suscrito entre las

---

[27] Véase Orden de Liquidación de 16 de septiembre de 1997, en el caso Juan Antonio García, Comisionado de Seguros de Puerto Rico v. El Fénix de Puerto Rico, Caso Civil Número KAC97-0946(906); Apéndice, a la pág. 536.
[28] Véase Resolución y Orden del Tribunal de Circuito de Apelaciones de 30 de septiembre de 1997, tomando conocimiento judicial de la insolvencia de El Fénix y decretando la paralización o suspensión

partes. A éstos, repetimos, no se le extienden los procedimientos
dispuestos en el mencionado Capítulo 38. Simplemente, el mencionado
Capítulo 38 no le provee protección alguna a la persona del fiado, o
contratista en el caso de autos, por lo que no provee tampoco para la
paralización del proceso civil en su contra.

El proceso judicial contra los fiados podía seguir su curso normal
y la sentencia emitida por el Tribunal de Circuito de Apelaciones tener
total y completo efecto con respecto a la responsabilidad de éstos ante
el incumplimiento de la obligación contractual que precisamente
asumieron para con el demandante. Por los fundamentos de derecho
anteriormente expuestos es que resulta totalmente improcedente
disponer que la parte demandante tenga que tramitar y ventilar la
totalidad de su reclamación dentro del procedimiento de liquidación
cuando, ciertamente, el dictamen judicial puede ser ejecutado con
respecto al Ing. Torres Félix, y con respecto a RYB Construction, ambas,
partes responsables civilmente en el pleito.

En resumen, a la parte demandante-reclamante le asiste el derecho
a proseguir su acción civil contra el contratista afianzado y demás
demandados hasta obtener una sentencia final y firme a su favor. No
podemos aceptar que el trámite administrativo y de liquidación y la
jurisdicción exclusiva del Tribunal de Primera Instancia, creada y
dispuesta en virtud de la orden de liquidación, le prohíba al demandante
hacer valer su reclamación en el foro apelativo contra el contratista
afianzado.[29]

---

temporera del caso de autos hasta el 17 de marzo de 1998. Apéndice,
a la pág. 75.
[29] Si es que se interesa y desea que al caso de un fiado le apliquen
las disposiciones pertinentes del Código de Seguros aquí en
controversia, le corresponde a la Asamblea Legislativa así hacerlo;

**III**

En resumen, y conforme los hechos particulares del presente caso, el Tribunal de Circuito de Apelaciones <u>no</u> tenía autoridad, o jurisdicción, para resolver el recurso ante su consideración <u>en cuanto al Fénix de Puerto Rico</u>. Ello así ya que, por mandato de las disposiciones del antes citado Capítulo 40, la reclamación contra esta <u>compañía en liquidación</u>, únicamente podía tramitarse en el foro administrativo.

En relación a la reclamación contra los demás codemandados, sin embargo, el tribunal apelativo intermedio <u>conservaba jurisdicción</u> para resolver y disponer de la misma; simplemente <u>no</u> procedía paralización alguna de los procedimientos contra el contratista fiado, entiéndase la acción independiente por el incumplimiento de la obligación contraída para con el demandante.

Por las razones antes expresadas es que, a nuestro juicio, procede emitir una Sentencia "mixta" mediante la cual: se <u>revoque</u> la emitida por el Tribunal de Circuito de Apelaciones, en cuanto la misma dispuso y resolvió de la acción instada contra el Fénix de Puerto Rico[30], y se <u>confirme</u> la misma en lo referente a los otros dos codemandados, esto es, el Ingeniero Torres Félix y RYB Engineers and Contractors, Inc.[31]

---

ciertamente <u>no</u> es función de este Tribunal hacerlo mediante un acto de legislación judicial.

[30] Esta reclamación debe ser enviada al foro administrativo como se disponen en la Opinión mayoritaria emitida.

[31] La mejor evidencia de que la Opinión mayoritaria es una errónea en derecho es la posición que, contradictoriamente, asume el Tribunal al final de la misma al concederle autoridad a un tribunal de instancia para que este foro, a su vez, le conceda jurisdicción al Tribunal de Circuito de Apelaciones para entender en el caso; ello, alegadamente, debido a "la avanzada etapa procesal en que se encuentra el presente caso".

Si la <u>ley</u> no concede jurisdicción, ¿cómo es posible que un tribunal lo pueda hacer? Mucho menos, cuando el "cedente" de la jurisdicción lo es un tribunal de instancia y el "receptor" de la misma lo es un tribunal de superior jerarquía.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

San José Realty, S.E., et
Als

      Recurrido

        v.                         CC-1999-480

                                               Certiorari

El Fénix de Puerto Rico, et
Als

      Peticionario

**Opinión Disidente emitida por el Juez Asociado señor Rivera Pérez a la cual se une el Juez Asociado señor Corrada del Río.**

San Juan, Puerto Rico, a 28 de junio de 2002.

**La Mayoría revoca una sentencia emitida por el Tribunal de Circuito de Apelaciones que había confirmado otra dictada por el Tribunal de Primera Instancia en el presente caso. La sentencia emitida por el foro de primera instancia declaró con lugar una demanda por incumplimiento de contrato, cobro de dinero y daños y perjuicios presentada por el dueño de una obra contra el contratista y la compañía aseguradora que emitió un "Payment and Performance Bond" para garantizar las obligaciones de tal contratista. La Mayoría concluye que cuando adviene a un estado de insolvencia una compañía de seguros que emitió una fianza de esa naturaleza, todas las reclamaciones,**

incluyendo la del dueño de la obra contra el contratista por incumplimiento del contrato de construcción, cobro de dinero y daños y perjuicios, automáticamente tienen que remitirse y tramitarse a través del procedimiento administrativo que contempla el Capítulo 40 del Código de Seguros de Puerto Rico[32] para la liquidación de los activos de una compañía de seguros en estado de insolvencia.  En el presente caso el Comisionado de Seguros obtuvo una Orden de la Sala Superior del Tribunal de Primera Instancia con jurisdicción y competencia, que autorizó el comienzo del referido procedimiento administrativo sobre aquellas reclamaciones dirigidas contra la compañía de seguros en estado de insolvencia.  Dicha orden no se extendió a las reclamaciones contra los asegurados o fiados por esa compañía.  Respetuosamente, disentimos.  Somos de la opinión que la norma jurisprudencial que formula la Mayoría no sólo es contraria a la clara letra del estatuto y a la manifiesta intención legislativa, sino que, además, desnaturaliza el procedimiento administrativo ante el Comisionado de Seguros en los casos de insolvencia de compañías de seguros.  Creemos que lastima seriamente la industria de la construcción y el renglón de negocios de la industria de seguros que se dedica a la emisión de fianzas de esa naturaleza.

I

La Mayoría[33] concluye lo siguiente:

Este Tribunal ya se ha expresado en cuanto al alcance del estatuto que hoy nos concierne, Art. 40.210, *supra*, y ha concluido que los pleitos pendientes contra un asegurador en liquidación bajo un contrato de garantía deben ser desestimados y remitidos al foro administrativo del procedimiento de liquidación.  <u>Intaco Equipment Corp. v. Arelis Const.</u>, *supra*; <u>Calderón Rosa-Silva & Vargas v. The Commonwealth Insurance Co.</u>, 111 D.P.R. 153 (1981).  Estos pronunciamientos son aplicables al caso de autos, especialmente lo resuelto en <u>Intaco</u>, ya que se trataba allí como aquí, del cobro de una fianza en garantía de un contrato de obra.  En aquella ocasión determinamos que la reclamación en cobro de dinero presentada ante el Tribunal de Primera Instancia, en contra de una compañía constructora y de la aseguradora que emitió el contrato de fianza de cumplimiento, debía desestimarse sin perjuicio de que fuera presentada

---

[32] 26 L.P.R.A. sec. 4001 <u>et seq.</u>

[33] Opinión Mayoritaria, págs. 12 y 13.

> nuevamente en el procedimiento administrativo a cargo del Comisionado de Seguros, porque el fin fundamental del Art. 40.210 es que exista un solo foro con jurisdicción que conglomere todas las reclamaciones en contra de la aseguradora insolvente. **(Énfasis nuestro.)**

No compartimos la óptica de la Mayoría sobre el alcance que le quiere imprimir a la norma jurisprudencial vigente sobre este asunto, aplicada al presente "caso y controversia".

En el caso de <u>Calderón, etc. v. The Commonwealth Ins. Co.</u>,[34] el entonces Tribunal Superior, Sala de San Juan, emitió una orden permanente para la liquidación de la compañía aseguradora, The Commonwealth Insurance Co., y designó al Comisionado de Seguros como su administrador liquidador bajo las órdenes de ese Tribunal. Dicha compañía de seguros había sido demandada ante otra Sala del Tribunal de Primera Instancia por cobro de servicios profesionales de abogado prestados a la misma, que ascendían a más de medio millón de dólares. El Comisionado de Seguros compareció ante esta última Sala del Tribunal de Primera Instancia y solicitó la desestimación de la demanda mediante el mecanismo de sentencia sumaria, aduciendo como fundamento su facultad para atraer a ese foro central administrativo todas las reclamaciones presentadas contra la compañía de seguros intervenida, por estar en estado de insolvencia, método que afirmó promovería la ordenada adjudicación de las mismas. La Sala del Tribunal de Primera Instancia donde se atendía la demanda en cobro de dinero presentada, denegó la solicitud de sentencia sumaria presentada por el Comisionado de Seguros, quien recurrió oportunamente ante nos. Emitimos una orden para que los demandantes ante el Tribunal de Primera Instancia, y recurridos ante nos, indicaran su razón para oponerse al encauzamiento de su reclamación por la vía especial provista en el antiguo Código de Seguros de Puerto Rico.[35] Comparecieron y expresaron que su posición no era la de frustrar los procedimientos administrativos especialmente ordenados para el caso, sino obtener con razonable prontitud la

---

[34] 111 D.P.R. 153 (1981).

[35] 26 L.P.R.A. secs. 4007-4014 respecto al anterior Código de Seguros de Puerto Rico.

adjudicación por el Comisionado de Seguros de su reclamación. No levantaron objeción a que fuera la Sala de San Juan del entonces Tribunal Superior, que tenía asignada la supervisión del procedimiento de liquidación, la que asumiera competencia en la referida reclamación de honorarios de abogado.

Resolvimos en aquella ocasión que la intención legislativa detrás de los Artículos 40.040, 40.190 y 40.130 del antiguo Código de Seguros[36] indicaban el propósito de reunir todas las reclamaciones en la Oficina del Comisionado de Seguros, en orden a una eficiente y más pronta consideración y adjudicación de las mismas. Concluimos, entonces, que toda vez que la demanda de los referidos abogados fue radicada antes de autorizarse la liquidación de la compañía de seguros, y habiéndose emplazado al Comisionado de Seguros, su prelación no quedaría afectada al referirla al foro administrativo.

Como podemos observar, de lo allí pautado lo único que apreciamos como aplicable al presente asunto es la normativa a los efectos de que toda reclamación contra una compañía aseguradora en estado de insolvencia y en proceso de liquidación tiene que tramitarse a través del procedimiento administrativo.

En _Intaco Equipment Corp. v. Arelis Const._[37] el Comisionado de Seguros de Puerto Rico, en su capacidad de liquidador de la Corporación Insular de Seguros, planteó que los pleitos pendientes contra un asegurador en liquidación deben ser remitidos ante el foro administrativo que conduce el procedimiento de liquidación, de acuerdo al Artículo 40.210 del Código de Seguros de Puerto Rico.[38] Concluimos, entonces, que le asistía la razón. Para poder determinar el alcance de la aplicación al "caso y controversia" que tenemos ante nos, resulta necesario precisar el _ratio decidendi_ de ese ejercicio jurisprudencial.

---

[36] 26 L.P.R.A. secs. 4004, 4019 y 4013 del anterior Código de Seguros de Puerto Rico.
[37] 142 D.P.R. 648 (1997).

[38] 26 L.P.R.A. sec. 4021.

Para ello, es preciso puntualizar los hechos que tuvimos ante nos en aquel momento.  Veamos.

Intaco Equipment Corporation, Intaco Aluma Corporation e Intaco Corporation, en adelante Intaco, presentaron una demanda en cobro de dinero contra Arelis Construction, en adelante Arelis, en el entonces Tribunal Superior, Sala de San Juan.  Posteriormente le fue practicada una enmienda a la demanda original para incluir a la aseguradora Corporación Insular de Seguros como fiadora de Arelis.  Intaco alegó que Arelis le adeudaba ciertas cantidades de dinero en concepto de cánones de arrendamiento de equipo para la construcción de un proyecto y que la Corporación Insular de Seguros era responsable por dicha suma de dinero en calidad de fiadora.  Mientras se conducía el trámite del referido pleito, otra de las Salas de San Juan del antiguo Tribunal Superior emitió una orden, mediante la cual se declaró a dicha aseguradora en estado de insolvencia, y dispuso su liquidación según el procedimiento administrativo establecido en el Capítulo 40 del Código de Seguros de Puerto Rico, supra.  Luego de varios incidentes procesales, incluso la paralización de los procedimientos, el Comisionado de Seguros en su capacidad de liquidador de la Corporación Insular de Seguros, compareció e informó al Tribunal que sus abogados asumían la representación legal de la Corporación y, al mismo tiempo, solicitó una nueva paralización de los procedimientos. Posteriormente, el Comisionado de Seguros solicitó la desestimación de la reclamación en contra de la Corporación Insular de Seguros por el fundamento de que esa Sala del antiguo Tribunal Superior había perdido su jurisdicción, a tenor con lo dispuesto por el Artículo 40.210 del Código de Seguros de Puerto Rico, supra.  El foro de primera instancia declaró sin lugar dicha moción y ordenó la continuación de los procedimientos.  Inconforme, el Comisionado de Seguros recurrió ante nos.  Concedimos un término a los demandantes, recurridos ante este Tribunal, para que comparecieran por escrito a mostrar causa por la cual no debíamos revocar la resolución recurrida y ordenar la desestimación de la reclamación judicial entablada en contra de la Corporación Insular

de Seguros, en virtud de lo dispuesto por el Artículo 40.210 del Código de Seguros de Puerto Rico, <u>supra</u>.

En el análisis y desarrollo del orden normativo hasta ese momento vigente, dirigido a pautar lo que allí formulamos, expresamos lo siguiente:[39]

> En *Asoc. de Garantía v. Commonwealth Ins. Co.*, 114 D.P.R. 166, 173 (1983), expresamos que "[e]n Puerto Rico, el proceso de liquidación de los activos de un asegurador insolvente se rige por las disposiciones de la Ley Uniforme de Liquidación de Aseguradores, incorporada a nuestro Derecho en los Arts. 40.070 a 40.140 del Código de Seguros, 26 L.P.R.A. secs. 4007-4014. Es propósito principal de esta legislación proveer un método justo y equitativo para la distribución de los activos de un asegurador en quiebra".

> En *Calderón, Etc. v. The Commonwealth Ins. Company*, 111 D.P.R. 153, 154 (1981), habíamos ya resuelto que los Arts. 40.040, 40.190 y 40.130 del Código de Seguros de Puerto Rico, 26 L.P.R.A. secs. 4004, 4079 y 4073, entonces vigentes, "con substancial claridad indica[ba]n el propósito de reunir todas las reclamaciones en la oficina del Comisionado-Administrador en orden a la eficiente y más pronta consideración y adjudicación de las mismas".

> Mediante la Ley Núm. 72 de 17 de agosto de 1991 (26 L.P.R.A. sec. 3801 n. y ss.), se derogaron los Capítulos 38, 39 y 40 del Código de Seguros de Puerto Rico y se sustituyeron por unos nuevos capítulos 38, 39 y 40.

> El Art. 40.210 del vigente Código de Seguros de Puerto Rico, *supra*, establece en lo pertinente:

> Sec. 4021.-Acciones por y contra

> (1) Al emitirse una orden nombrando un liquidador de una aseguradora del país o de un asegurador foráneo domiciliado en Puerto Rico, no se radicará ninguna acción judicial contra el asegurador o contra el liquidador, ni en Puerto Rico ni en cualquier otro lugar, *ni se mantendrá ni instará una acción de esa naturaleza luego de emitida la orden*. (Énfasis en el original.)

> En el Informe de la Cámara de Representantes de 4 de junio de 1991 se señaló en relación con el Art. 40.210, *supra*:

> No se radicará ninguna acción judicial contra el asegurador o liquidador ni se mantendrán acciones de esa naturaleza luego de emitida la orden de liquidación. Esto es cónsono con la decisión de nuestro Tribunal Supremo en *Calderón, Rosa Silva, Vargas vs. The Commonwealth Insurance Co.*, 111 D.P.R. 153 (1981) donde el Tribunal indica que toda reclamación contra el asegurador en liquidación debe dirigirse para su trámite administrativo al Comisionado de Seguros como Administrador-Liquidador, aún cuando se hubiese

---

[39] <u>Intaco Equipment Corp. v. Arelis Const.</u>, <u>supra</u>, págs. 650-651.

> instado demanda en cobro de dicha reclamación ante
> los tribunales de justicia.

> Resulta claro que la intención legislativa al aprobar
> el referido Artículo 40.210 fue establecer un procedimiento
> cónsono con nuestra decisión en *Calderón, Etc. v. The
> Commonwealth Ins. Co.*, supra.

Allí concluimos que el procedimiento de liquidación de un asegurador insolvente es un procedimiento especial de naturaleza estatutaria, por lo que el ejercicio de la jurisdicción de los tribunales está limitada por el estatuto que la regula. Expusimos, que el Capítulo 40 del Código de Seguros de Puerto Rico, <u>supra</u>, contiene una mayor eficiencia y economía en las liquidaciones, reduciendo a un mínimo los conflictos legales y una disminución de los problemas hasta ahora habidos entre las asociaciones de garantía de los diversos estados por falta de una legislación uniforme. Puntualizamos, que para lograr ese propósito se adoptó sustancialmente la legislación modelo de la Asociación Nacional de Comisionados de Seguros. Concluimos, además, que el historial legislativo del Capítulo 40 del Código de Seguros de Puerto Rico, <u>supra</u>, indica que las acciones contra un asegurador en proceso de liquidación deben remitirse al procedimiento de liquidación bajo la supervisión del tribunal con jurisdicción y competencia sobre éste. No obstante, aclaramos que lo anterior no significa que la parte demandante quedaría sin protección, pues de la determinación del liquidador, el reclamante puede recurrir en revisión al tribunal con jurisdicción y competencia.

> Dispusimos de esa controversia de la forma siguiente:

> Por los fundamentos expuestos, se dictará sentencia
> para revocar la resolución recurrida dictada por el tribunal
> de instancia el 21 [de] marzo de 1994 y, en consecuencia, se
> decretará la desestimación de la reclamación en contra de la
> Corporación Insular de Seguros sin perjuicio de que tal
> reclamación sea presentada nuevamente ante el Comisionado de
> Seguros en su capacidad de Administrador-Liquidador de
> acuerdo con los procedimientos adoptados por éste a tales
> fines. **(Énfasis nuestro.)**

Del ejercicio jurisprudencial que realizó este Tribunal en ambos casos no surge que hubiéramos pautado lo que aquí la Mayoría describe como norma aplicable a la controversia de autos. En Intaco no

resolvimos, ni mucho menos pautamos, que la reclamación judicial en cobro de dinero presentada ante el Tribunal de Primera Instancia contra Arelis y la Corporación Insular de Seguros debían desestimarse ambas, sin perjuicio de que fueran presentadas nuevamente en el procedimiento administrativo ante el Comisionado de Seguros. Allí resolvimos, como hemos podido apreciar, que la reclamación judicial en cobro de dinero presentada ante el Tribunal de Primera Instancia en contra de la Corporación Insular de Seguros se desestimó sin prejuicio de que pudiera ser nuevamente presentada ante el Comisionado de Seguros.

En el caso Calderón, Etc. v. The Commonwealth Ins. Co., supra, resolvimos la controversia que se nos presentó con un alcance normativo similar. La diferencia entre ambos es que el cuadro fáctico es marcadamente distinto. En este último se trata de una reclamación de honorarios como consecuencia de un contrato de servicios profesionales entre ciertos abogados y la aseguradora en estado de insolvencia. En el caso Intaco el cuadro fáctico refleja la presencia de una reclamación en cobro de dinero de un suplidor de servicios contra un contratista de construcción, quien utilizó esos servicios para cumplir con sus obligaciones resultantes de un contrato de obra que fue garantizado por virtud de una fianza ("Payment and Performance Bond"), emitida por un tercero, en este caso una compañía de seguros que advino a estado de insolvencia.

La Mayoría nos destaca la diferencia de los hechos del caso de autos de aquel marco fáctico que nos llevó a descargar nuestra función normativa en el caso Ruiz García v. New York Department Stores.[40] Puntualiza, que este último trataba sobre las disposiciones relativas a la Asociación de Garantía de Seguros Misceláneos de Puerto Rico, que también contempla acciones judiciales antes de la determinación de insolvencia del asegurador. Enfatiza, que el Código de Seguros de

---

[40] 146 D.P.R. 353 (1998).

Puerto Rico provee para la suspensión temporera de cualquier procedimiento en el que el asegurador esté envuelto a tenor con lo dispuesto en el Artículo 38.180 del Código de Seguros.[41] Coincidimos con ese criterio. No obstante, no compartimos la aplicación que del mismo realiza la Mayoría al cuadro fáctico ante nos. Este Tribunal reiteró el alcance del Artículo 40.120 (1) del Código de Seguros de Puerto Rico, supra, en ese caso. Allí la parte demandante había instado una acción en daños y prejuicios contra New York Department Stores. Dicha compañía estaba asegurada por una compañía de seguros que nunca fue traída al pleito. Después de radicada la acción, pero antes de recaer la sentencia, la compañía aseguradora de New York Department Stores advino a estado de insolvencia. El Tribunal de Primera Instancia, Sala Superior de Mayagüez, desestimó la demanda presentada contra New York Department Stores al amparo del Capítulo 40 del Código de Seguros de Puerto Rico, supra. La parte demandante presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones. Dicho Tribunal emitió sentencia confirmando la sentencia apelada que desestimó la reclamación de los demandantes contra New York Department Stores. Los demandantes recurrieron de dicha sentencia ante este Tribunal. En esa oportunidad revocamos al Tribunal de Circuito de Apelaciones y manifestamos que una acción independiente contra un asegurado no tiene que ser desestimada cuando su aseguradora entra en un proceso de liquidación.[42] Sin embargo, diferenciamos y establecimos que si la acción hubiese sido instada directamente contra el asegurado y su aseguradora, y ésta última hubiera entrado en el procedimiento especial de liquidación estatuido en el Capítulo 40 del Código de Seguros de Puerto Rico, supra, la acción hubiera quedado paralizada y sujeta a ese procedimiento especial. Puntualizamos, que la acción contra la aseguradora no hubiese podido continuar en el foro judicial.[43]

---

[41] 26 L.P.R.A. sec. 3818.

[42] Ruiz v. New York Dept. Stores, supra, pág. 119.

No hicimos expresión similar respecto al asegurado, pues los activos del mismo no estaban en liquidación.  El proceso administrativo ante el Comisionado de Seguros no está diseñado para atender una reclamación dirigida a obtener un dictamen a ser ejecutado sobre los activos de New York Department Stores.  No medió determinación, como cuestión de hecho y de derecho por la Sala Superior del Tribunal de Primera Instancia con jurisdicción y competencia, a los efectos de que la reclamación contra New York Department Stores interfiriera sustancialmente con la liquidación de los activos de su aseguradora.

**La controversia ante esta Curia presenta la emisión de una fianza para garantizar el cumplimiento de una obra de construcción y los pagos por los servicios y materiales para llevarla a cabo.  La compañía que está en estado de insolvencia es aquella que emitió la fianza.  No comprende ni se trata de la reclamación de una persona víctima de unos daños contra el que se los ocasionó y la compañía aseguradora que emitió la póliza para cubrir tal riesgo, la cual se encuentra en estado de insolvencia y en proceso de liquidación de sus activos ante la Oficina del Comisionado de Seguros.  Veamos los hechos y acontecimientos procesales que generan el "caso y controversia" ante nos, mediante el cual la Mayoría pretende formular la norma enunciada.**

**II**

El 10 de diciembre de 1990, el licenciado Rafael Rivera Olivencia, presidente de la Corporación SuperFarmacia San José de Aibonito y de la Sociedad Especial San José Realty, S.E., suscribió un contrato con RYB Engineers & Contractors, Inc., representada por su presidente, el ingeniero Luis B. Torres Félix, para la construcción de un edificio multipisos a ser utilizado para un negocio de farmacia y para el arrendamiento de locales comerciales.[44]  El costo de la obra era de

---

[43] Íd., pág. 116; Véase Luis M. Villaronga, Seguros, 68 Rev. Jur. U.P.R. 467 (1999).

[44] Apéndice XVIII del recurso de Certiorari, pág. 421.

seiscientos noventa y cinco mil dólares ($695,000).[45]  La obra fue pactada para completarse sustancialmente en un plazo de ocho (8) meses. Dicho plazo era una condición esencial del contrato.[46]  El Fénix de Puerto Rico expidió el 22 de febrero de 1991 sendos contratos de fianza para garantizar el cumplimiento de la obra y el pago de la labor y los materiales utilizados en la misma.[47]  Los trabajos de construcción comenzaron en la fecha pactada.[48]

**Para el 15 de noviembre de 1991, fecha pactada para la terminación sustancial de la obra, ésta no había finalizado.[49]  El licenciado Rivera Olivencia procedió a declarar al contratista en incumplimiento ("default"), notificando al ingeniero Torres Félix y a El Fénix de Puerto Rico.[50]  En junio de 1992, a petición del licenciado Rivera Olivencia, el arquitecto de la obra redactó un memorando enumerando las áreas de construcción que faltaban para terminar la obra.[51]  Dicho memorando fue notificado al ingeniero Torres Félix y a El Fénix de Puerto Rico.[52]  En ese mismo documento se indicaba categóricamente que el contratista de la obra había incumplido con el contrato y se le solicitaba a la compañía fiadora que cumpliera con su obligación de terminar la obra y pagara las deudas pendientes.[53]  En julio de 1992, el ingeniero Torres Félix abandonó las obras de construcción.[54]**

---

[45] Íd., pág. 424.

[46] Íd.

[47] Íd., págs. 235-238.  Performance Bond and Labor and Material Payment Bond.

[48] Íd., pág. 427.

[49] Íd.

[50] Íd.

[51] Íd.

[52] Íd., pág. 432.

[53] Íd.

El 24 de febrero de 1993, el licenciado Rivera Olivencia, su esposa, señora Ana Teresa Rodríguez González, y la sociedad legal de gananciales compuesta por ambos, la sociedad especial San José Realty y la compañía SuperFarmacia San José de Aibonito, Inc. instaron demanda contra el ingeniero Luis B. Torres Félix, la compañía RYB Engineers & Contractors Inc. y contra El Fénix de Puerto Rico, por incumplimiento de contrato, cobro de dinero y daños y perjuicios.[55] La parte demandante sostuvo que los codemandados le eran solidariamente responsables por los daños sufridos.[56]

El codemandado, ingeniero Torres Félix, contestó la demanda y presentó, a su vez, reconvención.[57]

Por su parte, El Fénix de Puerto Rico negó que fuera responsable por el incumplimiento del contrato y alegó que el contratista cumplió con sus obligaciones, pactadas en el contrato de construcción. Arguyó, además, que la parte demandante carecía de una causa de acción contra dicha compañía fiadora, porque nunca existió la declaración de incumplimiento ("default") exigida en el contrato de obra, en el contrato de fianza expedido y en la práctica generalmente aceptada en la industria de la construcción.[58]

El 14 de marzo de 1997, el Tribunal de Primera Instancia, Sala Superior de Aibonito, dictó sentencia[59] determinando que la parte demandante había cumplido con sus obligaciones contractuales, pues había realizado a tiempo los pagos estipulados en el contrato de obra

[54] Íd., pág. 433.

[55] Caso Civil BAC93-0027.

[56] Apéndice XVIII del recurso de Certiorari, págs. 252-255.

[57] Íd., págs. 258-278.

[58] Íd., págs. 256-257.

y había pagado por los cambios de órdenes efectuados.[60] Así mismo, dicho Tribunal determinó que los codemandados habían incumplido con sus obligaciones contractuales. El referido foro encontró que el ingeniero Torres Félix no completó ni entregó la obra en el plazo acordado; no realizó los pagos pertinentes a los suplidores, a pesar de haber recibido dinero para ello; no realizó los trabajos según fue pactado y, además, procedió a abandonar la obra. En cuanto a la corporación codemandada, El Fénix de Puerto Rico, el Tribunal de Primera Instancia encontró probado que ésta incumplió sus obligaciones contractuales al no completar la obra, una vez le fue notificado el incumplimiento de parte del contratista.[61] Además, determinó que las actuaciones de dicha compañía fiadora violaron los principios de buena fe contractual y constituyeron un cumplimiento negligente con sus obligaciones contractuales hacia el beneficiario de la fianza.[62] Concluyó, que la inacción de El Fénix de Puerto Rico provocó problemas en la obra, que pudieron haberse evitado con su pronta y diligente intervención.[63] Por lo antes expuesto, dicho Tribunal declaró con lugar la demanda y condenó a las partes codemandadas a pagar a la parte demandante la cantidad de ciento noventa y seis mil dólares ($196,000). Dicho Tribunal impuso, además, el pago de los intereses desde la presentación de la demanda, más las costas, y tres mil dólares ($3,000) en concepto de honorarios de abogado.[64] En cuanto a la reconvención

---

[59] Dicha sentencia fue archivada en autos el 24 de marzo de 1997.

[60] Íd., pág. 441.

[61] Íd.

[62] Íd., págs. 442-443.

[63] Íd., pág. 445.

[64] Íd., pág. 447.

**presentada por la parte codemandada, dicho Tribunal la declaró no ha lugar.[65]**

**Dicha sentencia fue apelada, oportunamente, ante el Tribunal de Circuito de Apelaciones por El Fénix de Puerto Rico,[66] por el licenciado Rivera Olivencia[67] y por el ingeniero Torres Félix.[68] El 23 de septiembre de 1997 dicho Tribunal ordenó la consolidación de los tres casos, por versar sobre las mismas partes y la misma controversia.[69]**

Mientras los recursos de apelación estaban ante la consideración del Tribunal de Circuito de Apelaciones, el 16 de septiembre de 1997, el Tribunal de Primera Instancia, Sala Superior de San Juan, emitió una orden en el caso civil número KAC97-0946(906), _Juan Antonio García, Comisionado de Seguros de Puerto Rico v. El Fénix de Puerto Rico_, sobre procedimiento de cobro y liquidación de un asegurador doméstico, bajo el Capítulo 40 del Código de Seguros de Puerto Rico, _supra_, contra El Fénix de Puerto Rico.[70] Mediante dicho dictamen se declaró insolvente a la referida compañía fiadora y, en consecuencia, se ordenó un procedimiento de liquidación contra ésta.[71] El Tribunal de Primera

---

[65] Íd.

[66] El recurso de apelación KLAN97-00799 fue radicado el 5 de agosto de 1997.

[67] El recurso de apelación KLAN97-00805 fue radicado el 6 de agosto de 1997.

[68] El recurso de apelación KLAN97-00809, se radicó el 7 de agosto de 1997.

[69] Apéndice II del recurso de _Certiorari_, pág. 70. Los tres recursos de apelación fueron consolidados bajo el caso KLAN97-00799.

[70] Apéndice XXI del recurso de _Certiorari_, págs. 526-540.

[71] Específicamente, el Tribunal de Primera Instancia, Sala Superior de San Juan formuló, entre otros, los pronunciamientos siguientes:

Se DECLARA que El Fénix está insolvente.

Se DESIGNA al Comisionado de Seguros como Liquidador de El Fénix, a tenor con lo dispuesto en el Artículo 40.150(1) del Código de Seguros.

Se AUTORIZA al Comisionado a tomar posesión inmediata de los activos de El Fénix, para administrarlos bajo la exclusiva

Instancia designó como liquidador de El Fénix de Puerto Rico al Comisionado de Seguros, a tenor con el Artículo 40.150 (1) del Código de Seguros.[72] El referido foro judicial dictaminó que toda reclamación contra la aludida compañía fiadora debía ser remitida al foro administrativo para el procedimiento de liquidación. Ordenó, además, que todo pleito pendiente contra El Fénix de Puerto Rico fuera desestimado y remitido a ese foro y todo aquel que fuera radicado contra

supervisión general de esta Sala del Tribunal o de la Sala de este Tribunal a la cual se le asigne el caso.

Se DISPONE que desde la fecha de esta orden de liquidación, el Comisionado de Seguros, como Liquidador de El Fénix, queda legalmente investido con título sobre toda la propiedad, contratos y derechos de acción y sobre todos los libros y expedientes de El Fénix, dondequiera que se encuentren.

Se ORDENA que los derechos y obligaciones de El Fénix [sic] de los reclamantes, acreedores generales, gobierno, accionistas, directores, oficiales, empleados y cualquier otro acreedor, y toda otra persona con interés en los bienes, propiedad o en posesión de El Fénix, quedarán definidos conforme existan a la fecha de esta ORDEN, salvo como se dispone en los Artículos 40.160 y 40.340 del Código de Seguros.

Se DISPONE que el Comisionado de Seguros inmediatamente tome posesión física de todas las oficinas, libros de contabilidad, libros corporativos, el sello corporativo, cintas magnéticas, archivos, expedientes ya sea en forma electrónica o en cualquier otra forma, gabinetes para expedientes y/o libros de contabilidad o cintas magnéticas, propiedades, edificios, apartamentos, terrenos, vehículos, valores, bonos, acciones, colaterales, fondos, cuentas a cobrar, cuantas [sic] y depósitos en bancos, certificados de depósito, cuentas de ahorros u otra cuenta de similar condición, cuentas y depósitos con corredores de valores, valores o documentos en cajas de seguridad o en custodia por cualquier institución, entidad o persona, contratos de arrendamientos, y todos los demás bienes, pertenencias, propiedad de o bajo control de El Fénix; aclarándose, que la falta de posesión física por parte del Comisionado de Seguros no altera la facultad que le concede el Artículo 40.150 en cuanto a que el Comisionado de Seguros como liquidador queda legalmente investido con título sobre todos los bienes de El Fénix dondequiera se encuentren desde la fecha de esta orden.

[72] 26 L.P.R.A. sec. 4015.

esa compañía debía ser remitido al mismo, de igual forma.[73]  Ordenó la paralización de toda acción civil en contra de un asegurado de El Fénix de Puerto Rico por un plazo de seis (6) meses, contados a partir de la fecha de la orden,[74] al amparo del Artículo 38.180 del Código de Seguros, <u>supra</u>.[75]  De igual manera, dicha Sala del Tribunal de Primera

---

[73] Apéndice XXI del recurso de <u>Certiorari</u>, pág. 535. El pronunciamiento del Tribunal de Primera Instancia, Sala Superior de San Juan, fue el siguiente:

> Se ORDENA, en virtud de lo dispuesto en el caso <u>Calderón, Rosa-Silva & Vargas</u> vs. <u>The Commonwealth Insurance Co.</u>, 111 D.P.R. 153 (1981) y en el caso de <u>Intaco Equipment Corp. y otros</u> vs. <u>Arelis Construction y otros</u>, 97 J.T.S. 32 y los Artículos 40.120. 40.210, 40.320, 40.330, 40.360, 40.390 y 40.400 del Código de Seguros, que toda reclamación contra El Fénix de Puerto Rico, Compañía de Seguros, se remita al FORO ADMINISTRATIVO del procedimiento de liquidación de El Fénix.  Asimismo, SE ORDENA que todo pleito pendiente, o que se radique contra El Fénix, sea desestimado y se remita al foro administrativo del procedimiento de liquidación de El Fénix.

> Se PROHIBE a toda persona natural o jurídica iniciar pleito alguno contra El Fénix, o el Comisionado como Liquidador de El Fénix, para reclamarle el pago de cantidad alguna adeudada por El Fénix o el pago de algún beneficio provisto en cualquier contrato, fianza o póliza otorgada por El Fénix, o para reclamar propiedad alguna bajo control o en posesión de El Fénix.

[74] Íd., pág. 536. El Tribunal de Primera Instancia ordenó la paralización de toda acción en la que la Asociación de Garantía de Seguros Misceláneos de Puerto Rico estuviera llamada a intervenir.  Dicho Tribunal expresó lo siguiente:

> Se PROHIBE a toda persona natural o jurídica iniciar pleito alguno contra un asegurado de El Fénix en una reclamación cubierta por el Capítulo 38 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 3801, et seq. y dispone la paralización de toda acción civil contra del asegurado por un plazo de seis (6) meses, contado a partir de la fecha de esta Orden, conforme a lo que dispone el Artículo 38.180 del Código de Seguros.

[75] Este estatuto dispone, en lo pertinente, lo siguiente:

> Todos los procedimientos donde el asegurador insolvente sea parte o venga obligado a defender a una parte ante un tribunal en Puerto Rico, se paralizarán por un período de hasta seis (6) meses y por aquel tiempo adicional que el tribunal conceda, a partir de la fecha en que se determinó la insolvencia o en que se instituyó un procedimiento auxiliar en Puerto Rico, según se describe en la sec. 4049

Instancia ejercitó su jurisdicción y asumió su competencia sobre toda materia, persona o reclamación relacionada con la aludida compañía fiadora.[76] Por último, dispuso que se notificara a toda persona que tuviera una reclamación contra la aludida compañía fiadora para que radicara su reclamación dentro del proceso administrativo, en un período de seis (6) meses, a partir de la fecha de esa orden. El Tribunal de Primera Instancia, Sala Superior de San Juan, dispuso, además, que el Comisionado de Seguros advertiría en la referida notificación y aviso, que de no reclamarse o presentarse las debidas reclamaciones y pruebas en el período fijado, se entendería que el derecho a reclamar fue abandonado.[77]

**El Tribunal de Circuito de Apelaciones emitió una resolución y orden[78] el 30 de septiembre de 1997, tomando conocimiento judicial de la determinación judicial sobre la insolvencia de El Fénix de Puerto**

---

de este título, lo que sea mayor, para permitirle a la Asociación una defensa adecuada en todas las causas de acción pendientes.

...

Esta sección provee una suspensión temporera en los procedimientos judiciales pendientes, en donde la aseguradora declarada insolvente sea parte o venga obligada a defender a una parte. Esta suspensión permite una transición para que la Asociación de Garantía de Seguros Misceláneos de Puerto Rico asuma la defensa en dichos procedimientos, obtenga los documentos necesarios para prepararse adecuadamente y evalúe las reclamaciones para decidir qué acción debe tomar con relación a éstas. Véase Ruiz v. New York Dept. Stores, supra ; Acevedo v. Plaza Las Américas, Inc., 108 D.P.R. 361 (1979), resuelto bajo la anterior sec. 3818; 1 Couch on Insurance 3d sec. 5:36 suppl. 2000, págs. 47-48; Willard v. Davies, 881 S.W. 2d 907 (1994); Snyder v. Douglas, 647 So. 2d 275 (1994).

[76] Apéndice XXI del recurso de Certiorari, pág. 536. A esos efectos, el Tribunal de Primera Instancia dispuso lo siguiente:

Se DISPONE, que a través de este caso, esta Sala de este Tribunal, o la Sala en que permanezca activo este caso, mantendrá jurisdicción y competencia continua y exclusiva sobre toda materia, persona o reclamación por cualquier cuantía relacionada con El Fénix fuere el asunto, reclamación o evento a favor o en contra de El Fénix, o el Comisionado como liquidador de El Fénix, ocurriere el asunto o evento o reclamación en Puerto Rico o fuera de Puerto Rico.

[77] Íd., pág. 537.

Rico y del proceso de su liquidación a tenor con el Capítulo 40 del Código de Seguros, supra, y de la designación del Comisionado de Seguros como su liquidador. En consecuencia, ordenó la paralización del procedimiento judicial ante sí en el que era parte El Fénix por un plazo de seis (6) meses, contados a partir de la fecha de la orden del Tribunal de Primera Instancia, conforme el Artículo 38.180 del Código de Seguros, supra. El caso fue paralizado hasta el 17 de marzo de 1998, o hasta que otra cosa fuera dispuesta por ese Tribunal.

Resulta importante señalar, que los demandantes en el caso de marras presentaron oportunamente su reclamación contra El Fénix de Puerto Rico ante el foro administrativo el 25 de noviembre de 1997.[79]

El 14 de abril de 1999, el Tribunal de Circuito de Apelaciones emitió sentencia confirmando la determinación del Tribunal de Primera Instancia. Dicha sentencia fue notificada y archivada en autos copia de la misma el 27 de abril de 1999.[80]

De dicho dictamen recurre ante nos el Comisionado de Seguros, señalando como único error cometido por el Tribunal de Circuito de Apelaciones lo siguiente:

Erró el Tribunal de Circuito de Apelaciones al emitir sentencia sin jurisdicción.[81]

---

[78] Apéndice VI del recurso de Certiorari, págs. 75-76.

[79] Apéndice I del Alegato del Peticionario.

[80] Apéndice XV del recurso de Certiorari, pág. 116.

[81] El Comisionado de Seguros no presentó alegación alguna ante el Tribunal de Circuito de Apelaciones sobre la falta de jurisdicción de ese Tribunal sobre el recurso de apelación del caso de marras por virtud de lo dispuesto en el Capítulo 40 del Código de Seguros, supra. Por el contrario, mediante "Moción en Cumplimiento de Orden" éste se allanó a la determinación a que llegara el referido foro apelativo sobre la solicitud de los codemandados ante ese foro de que el caso fuese desestimado sin perjuicio y presentado ante el foro de arbitraje. Es por este motivo que la sentencia emitida por el Tribunal de Circuito de Apelaciones no discute ningún planteamiento de falta de jurisdicción de ese Tribunal por razón del procedimiento de liquidación de El Fénix de Puerto Rico.

III

**La Industria de Seguros de Puerto Rico está revestida de un alto interés público, razón por la cual está estrictamente regulada. El Código de Seguros de Puerto Rico constituye el cuerpo estatutario aplicable a dicha industria.[82] El Congreso de Estados Unidos, mediante la Ley McCarran-Ferguson,[83] reconoció que son los estados los llamados a reglamentar y vigilar la industria de seguros, como resultado de sus amplios poderes estatales.[84] Es de especial interés para un estado velar por la situación financiera de las aseguradoras que realizan negocios en su jurisdicción, debido al impacto directo que la insolvencia de una aseguradora tiene en la industria de seguros, en los asegurados, los reclamantes, los acreedores y en el público en general. Los Capítulos 38, 39 y 40 del Código de Seguros de Puerto**

---

[82] 26 L.P.R.A. sec. 101 et seq.

[83] 15 U.S.C.A. secs. 1011-1015 (1997). La sección 1012 establece lo siguiente:

(a) State Regulation

The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) Federal regulation

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended [15 U.S.C.A. 41 et seq.], shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

[84] La sección 1015 de la Ley McCarran-Ferguson, supra, incluye a Puerto Rico cuando define un estado de la Unión, a los efectos de la aplicación del estatuto.

Rico[85] vigente contienen el procedimiento estatutario a seguir cuando una aseguradora amenaza con advenir a un estado de insolvencia. Estos capítulos proceden de la Ley Modelo de la National Association of Insurance Commissioners (NAIC), conocida como el NAIC Insurers Rehabilitation and Liquidation Model Act.[86] Dicha ley modelo surgió en respuesta a la preocupación de los estados ante el número significativo de compañías aseguradoras que advenían insolventes, y al impacto económico sustancial que esto tenía en la industria de seguros interestatal.[87] El propósito de la referida ley modelo es proteger los intereses de los asegurados, reclamantes, acreedores y el público en general, creando un sistema para la rehabilitación y la liquidación de las compañías aseguradoras a través de un proceso eficiente, económico, abarcador y uniforme que minimice los litigios y fomente la cooperación interestatal entre los estados en procedimientos de esta índole.[88] En general, esta ley modelo provee para que el Comisionado de Seguros del Estado, en respuesta a la

---

[85] 26 L.P.R.A. secs. 3801-4054.

[86] Véase la Exposición de Motivos de la Ley Núm. 72 de 17 de agosto de 1991, aprobada por la Asamblea Legislativa de Puerto Rico, que adicionó los Capítulos 38, 39 y 40 vigentes a nuestro Código de Seguros. Treinta y cuatro estados, además del Distrito de Columbia, **han adoptado la Ley Modelo de la NAIC o modelos similares. Entre los estados que han adoptado dicha Ley Modelo podemos nombrar los siguientes**: Alaska, Arizona, **California**, Colorado, Conneticutt, Georgia, Hawaii, Idaho, Indiana, Iowa, Kansas, Kentucky, Lousiana, Maine, Michigan, Mississippi, Missouri, Minnesotta, Montana, Nevada, Nebraska, New Hampshire, North Carolina, North Dakota, Ohio, Pennsylvania, Puerto Rico, South Carolina, South Dakota, Tennesse, Utah, Vermont, y Washington.

[87] Véase Francine L. Semaya, Stacy Holmes, Daren M. Orzechowski, Insurance Insolvency in the United States 1998 Update: New Legal and Business Developments in a Changing Global Environment, 778 Practicing Law Institute 69 (1998); Francine L. Semaya, Leonore S. Marema, An Overview of the State Insurance Receivership System, 27 Fall Brief /ABA 12 (1997); Kent M. Forney, Insurers Insolvency and Guaranty Associations, 43 Drake Law Review 813 (1995).

[88] Insurers Rehabilitation and Liquidation Act, sec. 1 (1978).

peligrosidad de la condición financiera de una aseguradora para los tenedores de pólizas, los acreedores y el público en general, comience un procedimiento judicial para conservar, rehabilitar, liquidar y disolver una compañía aseguradora. Dicho funcionario tendrá la obligación de reunir todos los activos de la compañía aseguradora, administrándolos hasta lograr su rehabilitación. De no ser posible, el comisionado solicitará al tribunal estatal con jurisdicción la liquidación de la compañía aseguradora, quien procederá a designar al liquidador de la misma. Su función principal será recoger los activos restantes de la compañía aseguradora y distribuirlos entre los reclamantes, de acuerdo a un sistema de prioridad estatutario. Este procedimiento, contemplado bajo la referida ley modelo, es uno abarcador y centralizado, supervisado por el foro de primera instancia con jurisdicción.[89] Los tribunales federales carecen de jurisdicción para supervisar dicho proceso de liquidación, ya que las compañías aseguradoras están expresamente exceptuadas de cobertura bajo la Ley Federal de Quiebras.[90] El procedimiento de liquidación de una compañía aseguradora a que se refiere dicha ley modelo, es un procedimiento

---

[89] Véase Francine L. Semaya, Lenore S. Marema, An Overview of the State Insurance Receivership System, 27 Fall Brief/ ABA 12(1997); 1 Couch On Insurance 3d, Cap. 5-6 (1997).

[90] 11 U.S.C.A. sec. 109 (b)(2)(3). Dicho estatuto dispone lo siguiente:

> (b) A person may be a debtor under chapter 7 of this title only if such person is not:
>
> (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, a New Markets Venture Capital company as defined in section 351 of the Small Business Investment Act of 1958, a small business investment company licensed by the Small Business Administration under subsection
>
> (3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

especial de naturaleza estatutaria, por lo cual la jurisdicción y la competencia de los tribunales está determinada por el estatuto que guía el proceso.[91]  Provee para que el tribunal que autoriza el proceso de liquidación pueda emitir una orden prohibiendo, suspendiendo, o desestimando toda acción contra la compañía aseguradora insolvente.[92] Tal facultad emana del principio de que la administración efectiva de un procedimiento de liquidación requiere que sea un solo tribunal el que tenga jurisdicción sobre toda reclamación contra los activos de una compañía aseguradora declarada insolvente.[93]  El propósito de una orden así dictada, es evitar que una persona obtenga una preferencia, sentencia, incautación, embargo u otro gravamen sobre los activos de la aseguradora, mientras el tribunal que lleva el proceso de liquidación mantenga su jurisdicción.[94]  Además, pretende evitar la reducción de los activos de la aseguradora y garantizar la distribución ordenada de los mismos, siguiendo la prioridad establecida en la aludida ley.[95]  En consecuencia, toda reclamación contra la aseguradora insolvente deberá hacerse dentro del procedimiento de liquidación.

Varios estados de la Unión, que han adoptado la Ley Modelo de la NAIC, han tenido la oportunidad de interpretar el alcance de una orden de esta naturaleza y su propósito.  En Iowa el Capítulo 507C de la Insurers Supervision, Rehabilitation and Liquidation Act[96] le confiere

---

[91] 1 Couch on Insurance 3d, sec. 5:40, págs. 5-74 (1997).

[92] Insurers Rehabilitation and Liquidation Act, sec. 5(A)(1) (1978).

[93] Insurers Rehabilitation and Liquidation Act, sec. 5(A) (1978).

[94] 1 Couch on Insurance 3d, sec. 5:40, págs. 5-74, 5-75 (1997).

[95] Insurers Rehabilitation and Liquidation Act, sec. 47 (1978); 1 Couch on Insurance 3d, sec. 6:5, págs. 6-11 (1997).

[96] Iowa Code section 507C et seq.

**jurisdicción exclusiva de toda materia relacionada con la aseguradora declarada insolvente al tribunal que supervisa el procedimiento de liquidación.** [97] **Este estatuto permite que se emitan órdenes que prohíban a cualquier persona radicar reclamaciones o continuar acciones judiciales, administrativas o en equidad contra una aseguradora insolvente y, así mismo, que se obtengan sentencias, embargos, secuestros o ejecuciones contra dicha compañía aseguradora. La orden emitida faculta al liquidador para consolidar toda reclamación** contra los activos de la aseguradora **y evita tener que comparecer ante otros tribunales para defender a la aseguradora insolvente.**[98] **De igual manera, se ha interpretado en el estado de Georgia la disposición estatutaria contenida en el Georgia Insurers Rehabilitation and Liquidation Act (GIRLA),**[99] **que prohíbe la radicación de acciones de cualquier naturaleza o la continuación de éstas** contra la aseguradora o sus activos. **El Tribunal Supremo de ese estado ha reconocido que el lenguaje claro de esta disposición estatutaria es susceptible de una sola interpretación, o sea, que esté en poder de un solo foro judicial el conducir el procedimiento de liquidación de una forma ordenada, y que determine las prioridades de los reclamantes. Expresó que es indispensable que el proceso sea de esta manera para evitar sentencias contradictorias de múltiples jurisdicciones y evitar** que los activos de la aseguradora sean gravados. [100] **La disposición**

---

[97] Iowa Code section 507C.24(1).

[98] Deborah Tharnish Craig, Kimberly K. Mauer, Chapter 507C- The Supervision, Rehabilitation and Liquidation of Insurance Companies in Iowa: Where no person has Gone Before, 36 Drake Law Review 317 339 (1986-87); Kent Forney, Insurers Insolvencies and Guarranty Associations, 43 Drake Law Review 813 (1995).

[99] OCGA sec. 33-37-56.

[100] Smith v. Farm & Home Life Insurance Co., 506 S.E. 2d 104 (1998).

**estatutaria pertinente del Código de Seguros de California[101] le**

**permite al tribunal con jurisdicción sobre el proceso de liquidación**

---

[101] Cal. Ins. Code sec. 1020.  Dicho estatuto lee de la manera siguiente:

Upon the issuance of an order either under Section 1011 or 1016, or at any time thereafter, the court **shall issue** such other injunctions or orders as may be deemed necessary to prevent any or all of the following occurrences:

(a) Interference with the commissioner or the proceeding.

(b) Waste of assets of such person.

(c) The institution or prosecution of any actions or proceedings.

(d) The obtaining of preferences, judgments, attachments, or other liens against such person or its assets.

(e) The making of any levy against any such person or its assets.

(f) The sale or deed for nonpayment of taxes or assessments levied by any taxing agency of property:

(1) Owned by such person.

(2) Upon which such person holds an encumbrance.

(3) Upon which such person has prior thereto commenced an action to foreclose any deed of trust or mortgage or has exercised the power of sale under any trust deed or mortgage which sale or foreclosure proceedings have not yet been completed or upon which no trustee's deed or judgment of court or sheriff's certificate of sale has been issued. "Taxing agency" as used in this section has the meaning ascribed to it by Section 121 of the Revenue and Taxation Code.  The injunctions or orders authorized by this subdivision may be modified, dissolved or rescinded by the court on motion of the commissioner, the State Controller, the person charged with the collection of taxes or assessments on such property, or any person beneficially interested in the property.  The recording in the office of the county recorder of any county in the State of an order or injunction issued pursuant to this section, shall constitute service of such order or injunction upon any taxing agency with respect to property or interests therein located in such county.

(g) Any managing general agent or attorney in fact from withholding from the commissioner any books, records, accounts, documents or other writing relating to the business of such person; provided, however, that, if by contract or otherwise any of the same are the property of such an agent or attorney, the same shall be returned when

la emisión de toda orden necesaria que evite la interferencia con el procedimiento de liquidación y con el Comisionado de Seguros. Así mismo, le permite a ese tribunal emitir una orden que evite el comienzo de una acción o procedimiento o la continuación de los mismos. En esa jurisdicción se puede solicitar al tribunal que supervisa el proceso de liquidación para que, en el uso de su discreción, exceptúe de esa disposición estatutaria a un reclamante, siempre y cuando éste demuestre que la acción que se pretende llevar es en el mejor interés de la aseguradora y del reclamante.[102] En __Webster v. Superior Court__[103], se interpretó la sección 1020 del Código de Seguros de California, __supra__, a los efectos de la discreción que tiene el tribunal que supervisa la liquidación para permitir la continuación de tales reclamaciones a tenor con el texto de ese estatuto. La situación particular presente en esa ocasión exigía la contestación de la interrogante siguiente: ¿cometió el foro de primera instancia, que supervisaba el procedimiento de insolvencia de una compañía aseguradora, un abuso de discreción al no permitir que se llevara una acción judicial de daños contra la compañía aseguradora de la compañía aseguradora declarada insolvente dado "el caso y controversia" presente ante sí? El Tribunal Supremo de California contestó dicha interrogante en la afirmativa. Fundamentó su conclusión en que la sentencia que se pudiera obtener del Tribunal Superior de San Francisco contra la compañía aseguradora de la aseguradora insolvente no afectaría los activos de la compañía aseguradora en estado de insolvencia, no causaría una injusticia a los demás reclamantes en el

---

no longer necessary to the commissioner or at any time the court after notice and hearing shall so direct. (Énfasis nuestro.)

[102] __Bank of America v. Quackenbush__, 66 Cal Rptr 2d 81 (1997).

procedimiento y no afectaría el procedimiento de liquidación de la compañía insolvente ante el Tribunal Superior de Los Ángeles. Expresó el Tribunal Supremo de California que la interpretación literal del estatuto pretendida por la aseguradora en estado de insolvencia podía conducir a resultados desventajosos a compañías de seguros en esa situación. Trasluce claramente que la posición de la aseguradora en estado de insolvencia en ese caso pretendía perjudicar seriamente al reclamante, Webster, y beneficiar a su aseguradora primaria. Las reclamaciones en procedimientos de quiebra o de insolvencia son reducidas con frecuencia a una pequeña fracción de su valor verdadero. De establecerse que la reclamación de Webster tenía que ser proseguida contra la aseguradora en estado de insolvencia y las aseguradoras de ésta en el procedimiento administrativo ante el Comisionado de Seguros, el beneficiario real era su aseguradora primaria y, como consecuencia, la compañía matriz de ambas. No tenemos la menor duda de que el Tribunal Supremo de California interpretó la sección 1020 del Código de Seguros de California, _supra_, a tenor con la intención legislativa que la inspiró, atendidas las circunstancias del "caso y controversia" que tuvo ante sí, del cual se desprende claramente su _ratio decidendi_. La norma pautada para esa jurisdicción fue diseñada para evitar que complejas estructuras corporativas en la industria de seguros subvirtieran el interés público que comprende el balance razonable que tiene que existir entre las reclamaciones contra una aseguradora insolvente y sus codeudores solidarios, cuando estos últimos sostienen intereses propietarios o económicos comunes. El caso ante nos no presenta tal problema, por no existir intereses económicos o propietarios comunes entre RYB Engineers & Contractors, Inc. y El Fénix de Puerto Rico, que no sea la condición de principal obligado en un

---

[103] 758 P.2d 596, 46 Cal. 3d 338 (1988), 250 Cal.Rptr. 268 (1988).

contrato de obra del primero y el de garantizador (fiador) de tal obligación del segundo.  RYB Engineers & Contractors, Inc. y El Fénix de Puerto Rico no tienen un dueño común, ni el resultado de sus operaciones beneficia o perjudica económicamente a la misma persona natural o jurídica.

El Tribunal Supremo de Nevada ha interpretado que una orden de otro estado prohibiendo toda acción contra una compañía aseguradora insolvente, incluyendo las reclamaciones existentes con anterioridad a la referida orden, es válida en dicho estado y merece entera fe y crédito.  Esto ayuda a garantizar que los activos de una aseguradora insolvente se repartan de una manera equitativa entre todos los reclamantes, independientemente del estado en que residan.[104]  Por último, el Tribunal de Apelaciones de Louisiana, al interpretar el alcance de una orden emitida por el tribunal que supervisaba el proceso de liquidación de una compañía aseguradora insolvente, al amparo de la disposición estatutaria estatal que prohíbe la radicación y la continuación de acciones paralelas al procedimiento de liquidación,[105] ha expresado que dichas órdenes son válidas, pues son parte de un proceso uniforme, comprensivo y exclusivo que garantiza la distribución equitativa de los activos de una aseguradora insolvente. El referido foro apelativo añadió que, una vez el proceso de liquidación ha comenzado, la jurisdicción sobre la materia se le concede al tribunal que supervisa el proceso de liquidación, y toda reclamación contra la compañía aseguradora insolvente deberá ser presentada ante ese foro. Concluyó que cualquier otro tribunal carece de jurisdicción sobre la materia.[106]  Otros estados han decidido de manera similar el alcance

---

[104] Integrity Insurance Co. v. Martin, 769 P. 2d 69 (1989).

[105] LSA-R.S. 22:734.

[106] State ex. rel Guste v. AILIC Corp., 595 So. 2d 797(1992).

**y el propósito de una orden que prohíba la radicación y continuación de acciones paralelas al procedimiento de liquidación.**[107]

**IV**

En Puerto Rico es el Artículo 40.210 (1) del Código de Seguros[108] el que recoge la sección 5 de la Ley Modelo del NAIC. Dicho artículo establece lo siguiente:

§ 4021. –Acciones por y contra

**(1) Al emitirse una orden nombrando un liquidador de un asegurador del país o de un asegurador foráneo domiciliado en Puerto Rico, no se radicará ninguna acción judicial** contra el asegurador o contra el liquidador, ni en Puerto Rico ni en cualquier otro lugar, ni se mantendrá ni instará una acción de esa naturaleza luego de emitida la orden. **Los tribunales de Puerto Rico darán entera fe y crédito a interdictos contra la compañía o contra el liquidador o a la continuación de acciones existentes contra el liquidador o la compañía** cuando tales interdictos se incluyan en una orden de liquidación emitida de conformidad con disposiciones correspondientes en vigor en otros estados. Cuando, a juicio del liquidador y para la protección del caudal del asegurador, se requiera la intervención del liquidador en una acción que esté pendiente contra el asegurador fuera de Puerto Rico, el liquidador podrá intervenir en la misma. **El liquidador podrá sufragar del caudal del asegurador los gastos de defensa de cualquier acción en que él intervenga con arreglo a esta sección. (Énfasis nuestro.)**

...

Este Tribunal interpretó el alcance de dicho estatuto en ocasiones anteriores. En <u>Intaco Equipment Corp. v. Arelis Const.</u>, <u>supra</u>, como hemos podido apreciar se nos planteó si una demanda en cobro de dinero presentada en el Tribunal de Primera Instancia, Sala Superior de San Juan contra una compañía constructora y la corporación aseguradora **que**

---

[107] Véase <u>Beecher v. Lewis Press Co.</u>, 661 N.Y.S. 2d 116 (1997); <u>Powell v. All City Insurance Co.</u>, 426 N.Y.S. 2d 135 (1980; <u>Commonwealth ex. rel Sheppard v. Central Penn. Nat. Bank</u>, 375 A. 2d 874 (1977); <u>Commonwealth ex. rel. Woodside v. Seabord Casualty Company</u>, 30 Pa. D.& C. 2d 705 (1963).

[108] 26 L.P.R.A. sec. 4021.

**expidió** contrato de fianza a su favor, **debía ser desestimada por advenir la última insolvente, habiéndose decretado su liquidación a tenor con lo dispuesto en el Capítulo 40 del Código de Seguros de Puerto Rico, <u>supra</u>. Allí expresamos, que a tenor con la jurisprudencia previa de este Tribunal**[109] **y la clara intención legislativa**[110] **detrás del vigente Artículo 40.210, <u>supra</u>,** toda acción contra una aseguradora insolvente en un proceso de liquidación debe ser remitida al procedimiento de liquidación bajo la supervisión del Tribunal con jurisdicción.[111] En consecuencia, ordenamos sólo la desestimación de la reclamación en contra de la compañía aseguradora en estado de insolvencia.

**V**

**La situación en el caso de marras presenta un trasfondo fáctico algo diferente a los confrontados previamente por este Tribunal. Cuando el Tribunal de Primera Instancia, Sala Superior de San Juan, emitió la orden en el caso civil KAC97-0946 (906), <u>Juan Antonio García,</u>**

---

[109] <u>Asoc. de Garantía v. Commonwealth Ins. Co.</u>, 114 D.P.R. 166 (1983); <u>Calderón, Etc. v. The Commonwealth Ins. Co.</u>, 111 D.P.R. 153 (1981). El propósito principal del proceso de liquidación de una aseguradora insolvente, es proveer **un método justo y equitativo para la distribución de los activos de un asegurador en quiebra que permita reunir todas las reclamaciones contra una aseguradora insolvente de una manera eficiente para que sean consideradas y adjudicadas con prontitud.**

[110] Véase el Informe Conjunto de la Cámara de Representantes de 4 de junio de 1991 del Sustitutivo a los Proyectos del Senado 277 y 589, pág. 42. Estos proyectos pasaron a ser la Ley Núm. 72 de 17 de agosto de 1991, que derogó los anteriores Capítulos 38, 39 y 40 del Código de Seguros y los sustituyó por los vigentes Capítulos 38, 39 y 40. Es meritorio señalar que la intención legislativa detrás del Artículo 40.210 surge claramente de dicho Informe Conjunto, en donde se indica que se pretende adoptar lo dispuesto por este Tribunal en <u>Calderón, Etc. v. The Commonwealth Ins. Co</u>, <u>supra</u>. Véase, además, la Exposición de Motivos de la Ley Núm. 72, 1991 Leyes de Puerto Rico 319. En la misma se establece que la nueva legislación pretende una mayor eficiencia y economía en las liquidaciones de las aseguradoras reduciendo a un mínimo los conflictos legales.

[111] Íd., pág. 652.

<u>Comisionado de Seguros de Puerto Rico v. El Fénix de Puerto Rico</u>, **sobre procedimiento de cobro y liquidación contra la aludida compañía aseguradora, ya en el caso de autos se había emitido sentencia por el Tribunal de Primera Instancia y se encontraba en apelación ante el Tribunal de Circuito de Apelaciones. Esta situación nos presenta la siguiente interrogante: ¿debe mantenerse un recurso de apelación radicado ante el Tribunal de Circuito de Apelaciones para revisar una sentencia dictada por una Sala Superior del Tribunal de Primera Instancia** contra una compañía aseguradora insolvente, **aún después de emitida la orden de su liquidación por otra Sala del foro de primera instancia? Contestamos esa interrogante en la negativa.**

**Varios estados se han enfrentado a la situación fáctica del caso de autos. En <u>American Star Insurance v. Grice</u>,**[112] **el Tribunal Supremo del estado de Washington resolvió que una orden de liquidación y de <u>injunction</u> de un estado recíproco,**[113] **prohibiendo toda acción contra una compañía aseguradora declarada insolvente, emitida durante la pendencia de una apelación en ese estado,** terminaba efectivamente la acción judicial contra la aseguradora. **De la misma manera, el Tribunal de Apelaciones para el Primer Circuito de Louisiana, en <u>Scott v. Baton Rouge Bus Company</u>,**[114] **resolvió que no podía entrar a revisar los daños concedidos** contra una compañía aseguradora insolvente **sometida a un procedimiento de liquidación, aún cuando la acción había sido radicada ante sí con anterioridad al comienzo de los procedimientos de liquidación, por lo que procedió a suspender la acción en contra de ésta.** No obstante, dicho Tribunal permitió la continuación de los

---

[112] 865 P. 2d 507 (1994).

[113] Estado recíproco significa cualquier estado que haya adoptado la Ley Modelo de la NAIC. En este caso la orden había sido emitida por el Estado de Wisconsin, a tenor con lo dispuesto en Wis. Stat. sec. 645.49.

[114] 118 So. 2d 486 (1960).

procedimientos en contra de la compañía de autobuses codemandada y revocó la determinación del tribunal de primera instancia en cuanto a la culpabilidad del conductor del autobús. **En Burrhus v. M&S Machine and Supply Co. Inc.,**[115] **el Tribunal de Apelaciones de Tejas decidió que ninguna apelación puede perfeccionarse, una vez se comienza un procedimiento de liquidación** contra una compañía aseguradora que amenaza con advenir insolvente.[116] **Estos pronunciamientos se basan en que la jurisdicción sobre la materia en esas jurisdicciones, una vez comienza un procedimiento de liquidación de una aseguradora insolvente, le corresponde estatutariamente al tribunal al cual le fue concedida por intención legislativa.**[117]

**Distinta fue la actuación del Tribunal de Nueva York en In Re Empire State Surety Co.**[118] **En esa ocasión el referido Tribunal determinó que el comienzo de una acción en contra de una fiadora referente a un "contractor's bond", iniciada antes de la declaración de insolvencia de ésta, establecía la reclamación. Añadió que la sentencia obtenida en dicha acción era válida aun cuando fue obtenida después de la orden de liquidación, pero antes de la disolución de la compañía aseguradora.**

**Ante la clara intención legislativa detrás del Artículo 40.210 (1) del Código de Seguros de Puerto Rico, supra, de regular la jurisdicción del Tribunal de Primera Instancia y concederle la competencia sobre la materia con relación a toda reclamación contra**

---

[115] 897 S.W. 2d 871 (1995).

[116] Tex. Ins. Code Ann., art. 21.28, sec.17.

[117] Véase Fewell v. Pickens, 39 S.W. 3d 447 (2001); In Re Advanced Cellular Systems, 235 B.R. 713 (1999); Smith v. Farm & Home Life Insurance Co., supra.

[118] 109 N.Y.S. 209 (1920).

**una aseguradora insolvente, entendemos que no nos queda más que hacer**

**cumplir dicha intención.**[119]  **Los Artículos 40.050 (1)(c)(f)(g)(h)(k)**[120]

_____

[119] <u>Pueblo v. Zayas Rodríguez</u>, res. el 17 de febrero de 1999, 99 TSPR 15, 147 D.P.R. ___ (1999), 99 J.T.S. 16; <u>García Pagán v. Shiley Caribbean, etc.</u>, 122 D.P.R. 193 (1988); R.E. Bernier y J.A. Cuevas Segarra, <u>Aprobación e Interpretación de las Leyes en Puerto Rico</u>, 2da ed., San Juan, Publicaciones J.T.S., 1987, Vol. I, Cap. 30, págs. 241-242.

[120] 26 L.P.R.A. sec. 4005. Dicho estatuto lee, en lo pertinente, de la manera siguiente:

(1) Un administrador nombrado en un procedimiento con arreglo a este Capítulo podrá solicitar en cualquier momento, y cualquier tribunal con jurisdicción general podrá conceder, aquellas órdenes de entredicho provisional, interdictos preliminares y permanentes, así como cualesquiera otras órdenes que fueren necesarias y pertinentes para evitar:

(a) ...

(b) ...

(c) interferir con el administrador o con un procedimiento establecido con arreglo a este Capítulo;

(d) ...

(e) ...

(f) la radicación o ventilación de cualesquiera acciones o procedimientos;

(g) la obtención de preferencias, sentencias, incautaciones, embargos o gravámenes contra el asegurador, su activo o sus tenedores de pólizas;

(h) la ejecución de una orden de embargo contra el asegurador, su activo o sus tenedores de pólizas;

(i)     ...

(j) ...

(k) cualquier amenaza o intento de llevar a cabo una acción, que pueda menoscabar el valor del activo del asegurador o poner en peligro los derechos de los tenedores de pólizas, acreedores o accionistas o la administración de cualquier procedimiento con arreglo a este Capítulo.

(2) ...

La Ley Modelo de la National Association of Insurance Commissioners (NAIC), <u>supra</u>, establece en su Artículo I, sección 5,

**y 40.520** [121] **del referido Capítulo 40 del Código de Seguros apoyan**

**nuestra conclusión.  El Artículo 40.520, <u>supra</u>, establece que mientras**

---

"Injunctions and Orders", que una vez se solicita la declaración de insolvencia económica de una compañía aseguradora, como cuestión de derecho, se instituye automáticamente un interdicto permanente aplicable a toda persona o entidad.  A estos efectos, el inciso A(1)(f) establece lo siguiente:

> An application or petition under Section 10,11, 17 or 20 of this act operates as a matter of law as an **automatic stay** applicable to all persons and entities, other than the receiver, which shall be permanent and survive the entry of an order of conservation, rehabilitation or liquidation, and which shall prohibit:
>
> (f) the institution or further prosecution of any actions or proceedings in which the insurer is a party;

Diferente es la situación en nuestra jurisdicción. El Artículo 40.050, <u>supra</u>, no contempla una paralización automática de los procedimientos cuando el Comisionado de Seguros solicita la determinación de insolvencia de una compañía aseguradora.  Esto surge con palmaria claridad de una lectura somera del referido estatuto y del Informe Conjunto de la Cámara de Representantes de 4 de junio de 1991 relativo a los Proyectos Sustitutivos del Senado 277 y 589 que pasaron a ser la Ley Núm. 72 de 17 de agosto de 1991, que adicionó los vigentes Capítulos 28, 39 y 40 del Código de Seguros de Puerto Rico.  Al plasmar la intención legislativa detrás del Artículo 40.050, <u>supra</u>, el aludido Informe, en la página 34, expresa lo siguiente:

> Se faculta al Administrador nombrado en cualquier procedimiento de cobro bajo el Capítulo 40 **para que solicite del Tribunal Superior las órdenes e interdictos que fueren necesarios para proteger el activo del asegurador.**

Véase, 1 <u>Couch on Insurance 3d</u>, sec. 5:40, <u>supra</u>. En relación con lo anterior, dispone:

> Statutes commonly authorize a court in which delinquency proceedings are instituted to enjoin all claims against the insurer, including claims existing prior to the order of liquidation. In most cases, **a stay must be requested, and the court has discretion to grant or deny the request as to individual actions.** _

[121] 26 L.P.R.A. sec. 4052. El Artículo 40.520, <u>supra</u>, dispone expresamente lo siguiente:

> Mientras esté pendiente en Puerto Rico o en cualquier otro estado un procedimiento de liquidación, denominado de esta manera o no, no se comenzará ni mantendrá en Puerto Rico ninguna acción o procedimiento de la naturaleza de

**esté pendiente en Puerto Rico o en cualquier estado de la Unión un procedimiento de liquidación no se comenzará ni mantendrá en Puerto Rico ninguna acción de la naturaleza de un embargo, incautación o mandamiento de ejecución** contra el asegurador declarado insolvente. **El Artículo 40.050 (1)(c)(f)(g)(h)(k),** <u>supra</u>**, permite que el Comisionado de Seguros de Puerto Rico obtenga una orden de entredicho provisional o de interdicto preliminar y permanente para evitar la obtención de preferencias, sentencias, incautaciones, embargos o gravámenes** contra el asegurador declarado insolvente, sus activos o sus tenedores de pólizas. **Así mismo, persigue evitar la ejecución de una orden judicial de embargo** contra la aseguradora insolvente.

**Por lo antes expresado,** concluimos que toda reclamación contra El Fénix de Puerto Rico **debe ser remitida al foro administrativo, bajo la supervisión de la Sala Superior de San Juan del Tribunal de Primera Instancia, de conformidad con la orden emitida por este último, a tenor con el procedimiento establecido en el Capítulo 40 del Código de Seguros,** <u>supra</u>. **Los demandantes de autos radicaron a tiempo ante dicho foro su reclamación contra la compañía aseguradora insolvente por lo que su acción o reclamación contra dicha aseguradora quedó amparada.** No obstante, somos de la Opinión, contrario a la Mayoría, que las reclamaciones de San José Realty, S.E. y otros contra el ingeniero Luis B. Torres Félix y la compañía RYB Engineers & Contractors Inc., codemandados fiados por El Fénix de Puerto Rico, podían continuar ante el Tribunal de Circuito de Apelaciones, por no haberse prohibido tal asunto en la Orden dictada por el Tribunal de Primera Instancia, Sala

---

un embargo, incautación o mandamiento de ejecución contra el asegurador o su activo.

Superior de San Juan, en el procedimiento iniciado ante sí por el Comisionado de Seguros.

## VI

El **artículo 1721 del Código Civil de Puerto Rico**[122] **define el contrato de fianza.  Dicho artículo lee de la manera siguiente:**

> **Por la fianza se obliga uno a pagar o cumplir por un tercero, en el caso de no hacerlo éste.**

> **Si el fiador** se obligare solidariamente **con el deudor principal, se observará lo dispuesto en las secs. 3101 a 3112 de este título.  (Énfasis nuestro.)**

De la definición antes mencionada se desprende la naturaleza fundamental del contrato de fianza.  El contrato de fianza es la relación contractual resultante de un acuerdo donde la fiadora ("surety") se hace responsable de la deuda, **el incumplimiento o el error de otro (principal),** a favor de un acreedor ("obligee").[123]  La fianza es la figura típica de la garantía personal.[124]  Generalmente constituye "una obligación accesoria que, en garantía de deuda ajena, asume el fiador y que debe cumplir subsidiariamente en defecto del

---

[122] 31 L.P.R.A. 4871.

[123] 1 <u>Couch on Insurance 3d</u>, sec. 1:14, págs. 1-26, 11 <u>Couch on Insurance 3d</u> sec. 163:1, pág. 163-9 (1998); El <u>Restatement (First) of Security</u> sec. 82 (1941) define la fianza como la relación que existe cuando una persona se obliga y otra persona está bajo la misma obligación hacia un principal, quien sólo tiene derecho a recibir un cumplimiento.

[124] 26 L.P.R.A. sec. 409 (3).  Nuestro Código de Seguros define **el seguro de garantía** de la manera siguiente:

> (1) ...

> (2) ...

> (3) **Garantizar el cumplimiento de contratos y garantizar y otorgar fianzas, obligaciones y contratos de fianza.**  (Énfasis nuestro.)

> (4) ...

cumplimiento de la obligación fiada".[125]  **Es un contrato accesorio,**

**porque el fiador se obliga a cumplir la obligación en el caso de no**

**hacerlo el deudor principal.**   "La fianza implica la existencia de una

obligación principal y de una obligación accesoria pactada para

asegurar el cumplimiento de la primera".[126]  **Es decir, dicho contrato**

**es distinto y separado al contrato que establece la obligación**

**principal.**[127]  La fianza no se considera en España como un contrato

aleatorio, toda vez que en ese contrato el fiador conoce exactamente

en qué consiste su obligación y cuáles son los límites de su

prestación. [128]  No así en el contrato aleatorio en donde dicha

obligación no está determinada.[129]

La fianza puede constituirse en Puerto Rico para que los obligados

respondan de manera solidaria.  Dicha clase de fianza se pacta, en la

mayoría de los casos, "para vincular con mayor intensidad al fiador

proporcionándole al acreedor la más expedita satisfacción de su

crédito". [130]  La fianza solidaria abre patrimonios distintos al

---

[125] J.L. Lacruz Berdejo et als, Elementos de Derecho Civil, Derecho de Obligaciones, 3ra ed., Barcelona, Ed. Bosch, 1995,  Vol. 2, pág. 339.

[126] Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, pág. 587.

[127] Luan Invest. v. Rexach Const. Co., res. el 8 de diciembre de 2000, 2000 TSPR 182, 152 D.P.R. ___ (2000), 2000 J.T.S. 196.

[128] Comentarios al Código Civil y Compilaciones Forales, 2da ed., Madrid, Ed. de Derecho Privado, 1990, T. XXIII, pág. 29.

[129] El Artículo 1690 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4741, define los contratos aleatorios (de alea o suerte) de la manera siguiente:

> Por el contrato aleatorio, una de las partes, o ambas recíprocamente, se obligan a dar o hacer alguna cosa en equivalencia de lo que la otra parte ha de dar o hacer para el caso de un acontecimiento incierto, o que ha de ocurrir en tiempo indeterminado.

[130] Lacruz Berdejo et als, op.cit., pág. 364.

acreedor para garantizar su crédito o interés. El acreedor puede exigir la totalidad de la deuda a cualquiera de los fiadores o a ambos.[131] De esta manera se distingue de la fianza simple, en que los dos codeudores lo son de manera principal, sin subordinación de la deuda.[132] **No obstante, la solidaridad pactada en la fianza no hace que ésta pierda su naturaleza propia.**[133] **Si el fiador se obligase solidariamente con el deudor principal, no debe entenderse en el sentido de que dejen de tener aplicación las reglas relativas a la fianza.**[134] Por ejemplo, la accesoriedad existe, inclusive, cuando el fiador se ha obligado solidariamente con el deudor principal.[135] Igualmente, el fiador solidario que paga parte o la totalidad de la deuda tiene derecho de reembolso y subrogación contra el deudor principal en los términos ordinarios.[136] "El acreedor no puede desconocer que el fiador solidario no es sino **un garante**, por lo que goza de los derechos de reembolso y subrogación que aquél debe respetar."[137]

La interrogante de si un contrato de fianza puede ser considerado como un "contrato de seguro", debe contestarse haciéndonos la siguiente pregunta sobre la fianza en cuestión: ¿para qué fue emitida? La sección 163:17 de <u>Couch on Insurance 3d</u> establece que aunque los

---

[131] Lacruz Berdejo et als, <u>op.cit.</u>, pág. 364. Véase también 11 <u>Couch on Insurance 3d</u> secs. 165: 158, 165: 159, págs. 165–125,165–126; Artículo 1097 del Código Civil, 31 L.P.R.A. sec. 3108.

[132] Puig Brutau, <u>op. cit.</u>, pág. 589.

[133] Lacruz Berdejo et als, <u>op. cit.</u>, págs. 365–366; <u>Comentarios al Código Civil y Compilaciones Forales</u>, 2da ed., Madrid, Ed. de Derecho Privado, 1990, T. XXIII, págs. 36–37; <u>Carr v. Nones</u>, 98 D.P.R. 236 (1970).

**[134] L. R. Puerta Luis, <u>La Solidaridad del Responsable Civil y de su Compañía Aseguradora frente al Perjudicado</u>, Madrid, Ed. Montecorvo, 1977, pág. 134; <u>WRC Prop., Inc. v. Santana</u>, 116 D.P.R. 127 (1985).**

[135] Puig Brutau, <u>op. cit.</u>, págs. 593–594.

[136] Lacruz Berdejo et als, <u>op. cit.</u>, pág. 370; <u>Carr v. Nones</u>, <u>supra</u>; <u>WRC Props, Inc. v. Santana</u>, 116 D.P.R. 127 (1985).
[137] Lacruz Berdejo et als, <u>op. cit.</u>, pág. 366.

contratos de fianza pueden tener aspectos del contrato de seguros, existen diferencias entre ambos y, de ordinario, los contratos de fianza no están incluidos en las definiciones estatutarias del contrato de seguros de los estados.[138]

**El contrato de seguro** es, en esencia, un contrato mediante el cual una parte llamada aseguradora, por una consideración generalmente monetaria, promete realizar cierto pago, generalmente monetario también, en caso de que ocurra la destrucción o el menoscabo de un objeto en el cual el asegurado tiene especial interés. El objeto asegurado varía según la naturaleza del contrato de seguros.[139] El contrato de seguro es, por su naturaleza, aleatorio, voluntario, ejecutorio, condicional y personal.[140] En concreto, el Código de Seguros de Puerto Rico define dicho acuerdo como "el contrato mediante el cual se obliga a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo".[141]

Existen ciertos acuerdos contractuales que se asemejan al contrato de seguros y pudieran, en algunas circunstancias, ser equiparados con éste. Según Couch on Insurance 3d, el estudio de tales contratos estarían bajo su área, dependiendo de si el contrato en controversia cumple con la definición general del contrato de seguro y si, además, cumple con los criterios siguientes: el contrato en controversia está gobernado por las mismas reglas y principios que le son de aplicación a la industria de seguros o requiere la aplicación de unos principios y teorías que no le son de aplicación a ningún área

---

[138] 11 Couch on Insurance 3d, pág. 163-29 (1998).

[139] 1 Couch on Insurance 3d, sec. 1:6, págs. 1-11 (1998).

[140] 1 Couch on Insurance 3d, sec. 1:10, págs. 1-19 (1998).

[141] 26 L.P.R.A. sec. 102.

de dicha industria; el contrato ésta gobernado exclusivamente por detallados requisitos estatutarios que varían según su contexto; el contrato está íntimamente ligado con otros campos del derecho y sus similitudes con el contrato de seguro son características secundarias; y, por último, si el contrato en controversia es uno que acompaña o coincide con la actividad general y los productos de la industria del seguro o se ofrece por una entidad que no tiene conexión con la industria del seguro.[142] Dependiendo de las respuestas a estas interrogantes, Couch on Insurance 3d considera el contrato uno gobernado por las disposiciones aplicables a la industria del seguro y, en consecuencia, es objeto de análisis y discusión como tema incluido en dicha área del derecho. Puntualiza Couch on Insurance 3d, que ciertos convenios contractuales gozan de algunas características del contrato de seguro y podrían, en ciertas circunstancias, considerarse como contratos equivalentes al contrato de seguro. **Los convenios contractuales que pueden ser clasificados en esta categoría son los "performance bonds", los contratos de garantía y los contratos de fianza.**[143] En específico, la sección 1:13 de Couch on Insurance 3d expresa que los contratos que consisten de la relación entre tres (3) partes relativas a los riesgos que están esencialmente en manos y bajo el control de una de las partes no son allí objeto de discusión, porque éstos levantan asuntos referentes a los derechos y obligaciones de terceras personas que son irrelevantes al campo del derecho de seguros y que el derecho a recibir un pago se determina por el análisis de otros campos del derecho.[144] Aunque los contratos antes mencionados pueden visualizarse desde la perspectiva de la obligación de una parte en asegurar o indemnizar a

---

[142] 1 Couch on Insurance 3d, sec. 1:13, pág. 1–25 (1998).

[143] Íd., sec. 1:12, pág. 1–24.

[144] Íd., pág. 1–25.

otra por el posible incumplimiento de una tercera en el desempeño de una obligación legal debida, existen unas diferencias básicas entre éstos y el contrato de seguro. En primer lugar, dichos arreglos contractuales consisten en la relación de tres (3) o más partes. En esto se diferencian significativamente, y como regla general, del arreglo tradicional de un contrato de seguro.[145] Otra diferencia consiste en donde radica el control de los riesgos asumidos por la parte que "asegura" en un contrato de seguro y en los contratos de garantía y de fianza.[146] **En el caso del contrato de seguro el riesgo es controlado sólo por la naturaleza o la suerte. En los casos de los contratos de garantía y de fianza el riesgo está completa o parcialmente en las manos de una de las partes.[147] Existe otra distinción importante entre ambos, en el contrato de seguro es el asegurador quien está primariamente obligado al ocurrir la eventualidad y quien tiene que sufrir la pérdida sostenida. En los contratos de garantía y de fianza el "asegurador" está normalmente obligado secundariamente y tiene derecho a que el principal le indemnice por lo pagado.**[148] Respecto a las fianzas emitidas para garantizar los contratos de construcción, Daniel E. Toomey y Tamara Mc Nulty, en su artículo de revista jurídica el Surety Bonds: A Basic User's Guide For Payment Bond Claimants and Obligees,[149] sostienen que las fianzas no son contratos de seguro aún

---

[145] 11 Couch on Insurance 3d, sec. 163:1, pág. 163-9 (1998).

[146] 1 Couch on Insurance 3d, sec. 1:18, págs. 1-31 (1998). El riesgo puede caracterizarse como el grado en que la contingencia está bajo el control de una de las partes.

[147] Íd.

[148] Íd.

[149] 22 Construction Law 5 (2002). Véase, también, T. Scott Leo, The Construction Contract Surety and Some Suretyship Defenses, 34 William and Mary Law Review 1225 (1993) y P.G. Alber, Making Sense Out Of Performance and Payment Bonds, 71 Michigan Bar Journal 1020 (1992).

cuando las agencias estatales que regulan la industria del seguro

insisten en agruparlos en una misma categoría.  A esos efectos expresan

lo siguiente:

> **Surety is not insurance.**  While state insurance laws and agencies regulating insurance and surety companies often lump the two together, **there is a fundamental difference between surety bonds and insurance.**  One commentator explained the difference between suretyship and insurance as follows:
>
> Many courts mistakenly believe that if a contractor had desired coverage for its poor workmanship then the proper instrument is a performance bond.  This reasoning, however, arises from a fundamental misunderstanding as to the nature of suretyship.  **Performance bonds do not provide contractors with insurance.  If a surety performs under a performance bond it is entitled to reimbursement from the contractor.  This is not insurance.**  In other words, contractors do not secure performance bonds in order to protect themselves, but rather owners require contractors to secure performance bonds to protect against the credit risk that the contractor will not be able to perform its contractual obligations.  In other words, it is not the performance bond that indemnifies the principal from claims against it for poor workmanship, as insurance does for the negligent acts of a contractor, it is the reverse, i.e., the surety protects an obligee or a payment bond claimant against the credit risk of the contractor's being able to perform, or being able to pay its sub-contractors or suppliers.  **Thus, normally insurance is a two-party relationship, i.e., the insured and the insurer.  In contrast, there are three parties involved in a payment or performance bond.**  In the case of the performance bond they are (a) the "obligee", or the party that seeks to protect itself from the default in performance; (b) the contractor or subcontractor, known in this context as a surety's "principal"; and (c) the surety that provides the bond to protect against the principal's default.  The parties involved in a payment bond include (a) the payment bond claimant (subcontractor, supplier, or laborer) instead of the obligee; (b) the principal; and (c) the surety.

Añaden, en su análisis del tema, lo siguiente:

> A critical factor in the surety triparty relationship is that sureties require the principals and may require other individuals, depending on the financial wherewithal of the principal, to sign general agreements of indemnity (GIAs) in which those indemnitors agree to indemnify the surety from any losses sustained by the carrier arising out of the issuance of the bonds and sureties having to make payment or perform under either or both the payment or performance bond.  These are extremely one-sided agreements and are meant to be.

The existence of the GIA causes the relationships in the surety arrangement to be totally different from that of insurer and insured. **In insurance the policyholder does not indemnify its insurance carrier when there is a default. Rather, the insurer's losses are recouped through premiums paid by all policyholders.**

...

... **For a surety to have an obligation to act pursuant to its performance bond, the principal must first have failed to fulfill its obligations.** Further, the obligee must have fulfilled its obligations. **Performance bonds are distinctly different from insurance in these conditions precedent to the surety's obligations arising under the performance bond.** (Énfasis nuestro.)

...

En Caribe Lumber v. Inter-Am. Builders[150] establecimos la diferencia entre el contrato de fianza como figura jurídica y el contrato de seguro. En dicha ocasión diferenciamos ambos contratos. A tales efectos, expresamos lo siguiente:

**En primer lugar, la obligación contraída por la fianza es** *accesoria* **y** *subsidiaria*, **porque no tendría objeto si no existiera otra obligación principal cuyo cumplimiento asegure y garantice, hasta el extremo que sin ésta no se concibe la existencia de la fianza. No es una obligación principal e independiente y con vida propia, porque surge a la vida jurídica cuando exista la obligación principal que garantiza; y es subsidiaria y condicional porque su valor efectivo no surge hasta que se cumpla la condición o se realice el hecho futuro e incierto de dejar de satisfacer su débito el principal obligado en la forma y en el tiempo en que se comprometió a hacerlo. Se considera a la fianza como una "verdadera promesa", porque el fiador es extraño a la obligación contraída por el deudor con relación al acreedor e interviene en la relación jurídica entre éstos, únicamente al solo objeto de garantizar su cumplimiento. En segundo lugar, es** *unilateral* **porque puede establecerse sin intervención del deudor, y aún del acreedor en cuyo favor se constituye; y porque de la fianza se derivan obligaciones por parte del fiador con relación al acreedor, aunque su cumplimiento o consumación da origen a obligaciones del fiado respecto del fiador; y tercera, que el fiador es persona distinta del fiado, porque nadie puede ser fiador personalmente de sí mismo.** No ocurre ésto en las garantías reales, como la prenda y la hipoteca, en las cuales el mismo deudor grava sus bienes propios, muebles e inmuebles, para garantizar el pago de su deuda. Manresa, *Código Civil Español*, Tomo 12, págs. 158 *et seq.*, 5ta ed., Instituto

---

[150] 101 D.P.R. 458 (1973).

Editorial Reus, Madrid, 1951. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, Tomo IV, 9a. ed., Instituto Editorial Reus, Madrid, 1961, págs. 685 *et seq*.

En cuanto **al contrato de seguro, su carácter es bilateral, porque son mutuos y correlativos los derechos y deberes establecidos entre una compañía aseguradora y el asegurado, por proceder de una misma causa.**

En el caso del seguro, bien fuere fuego, vida, accidente, o el que sea, los aseguradores asumen **todo el riesgo,** lo que supone el cobro de una prima adecuada al riesgo envuelto. **La teoría básica de la fianza, sin embargo, presupone que el fiador no asume gran riesgo, y que las primas recibidas son meramente cargos por servicios rendidos al prestar su crédito. En el contrato de seguro hay dos partes —el asegurador y el asegurado. Si el asegurado sufre una pérdida cubierta por el contrato, el asegurador le paga. En el contrato de fianza, por otro lado, hay tres interesados. El deudor en la transacción objeto de la fianza es el** *principal*. **Es éste el que promete al beneficiario de la fianza, o sea, al** *obligado*, **qué hará o se abstendrá de hacer, una cosa cierta. El** *fiador*, **quien es la otra parte, dice en efecto que si el principal no cumple, el fiador cumplirá, o en su defecto, restituirá al obligado cualesquiera daños que éste sufriera, o que habrá de pagarle determinada suma como penalidad.** (Énfasis nuestro.)

El contrato de fianza es utilizado con frecuencia para garantizar las obligaciones de los contratistas en los proyectos de construcción. Dicho contrato ha alcanzado gran uso en este campo por los grandes riesgos económicos envueltos en la construcción y la complejidad de sus proyectos. Esta figura juega un rol importantísimo y fundamental en la industria de la construcción, y como tal tiene un alto interés público. El propósito principal de los referidos contratos de fianza es garantizar la terminación de un proyecto y el pago de la mano de obra y de los materiales.[151]

---

[151] Los "contractors bond" pueden ser de dos (2) tipos: "performance bond" y "labor and material payment bond" (conocido como "payment bond"). El "performance bond" garantiza que el contratista va a ejecutar su obligación según pactada en el contrato y provee para que si el contratista incumple y no termina su obligación, la fiadora termine la obra o pague daños hasta el límite establecido en la fianza. El "payment bond" le garantiza al dueño de la obra que toda la labor y los materiales utilizados en la obra serán pagados por la fiadora si el contratista incumple.

La mayoría de estas fianzas contemplan obligaciones de naturaleza solidaria de la fiadora y el principal frente al beneficiario. No obstante, aún cuando la fianza sea redactada de manera que se pretenda que la obligación de la fiadora sea una principal ante el beneficiario, o dueño del proyecto, la obligación de ésta es en efecto una obligación accesoria a la obligación del principal, o contratista, y la fiadora tiene un derecho inherente de repetir y obtener indemnización del contratista por virtud de su incumplimiento con el contrato de obra, cuando ésta haya cumplido por él o indemnizado los daños ocasionados por su incumplimiento.[152]

**Con esto en mente, debemos preguntarnos: ¿puede un contratista de construcción levantar como defensa ante un tribunal que el dueño está impedido de reclamarle judicialmente por el incumplimiento de su parte de ese contrato, porque la compañía aseguradora que garantizó mediante fianza su obligación advino a un estado de insolvencia y está sometida al procedimiento administrativo contemplado en el Código de Seguros para su liquidación? Contestamos dicha interrogante en la negativa.**

**La Mayoría sostiene que "[a]nte la existencia indiscutible del vínculo de solidaridad entre el Fénix, el Ing. Luis B. Torres Félix y RYB Engineers & Contractors, Inc. <u>es forzoso concluir que no pueden dividirse las reclamaciones entre distintos foros</u>". No compartimos tal óptica.**

**La insolvencia de una compañía aseguradora, en proceso de liquidación a tenor con el Capítulo 40 del Código de Seguros, <u>supra</u>, constituye una defensa personal de dicha entidad, la cual no puede ser levantada por el contratista para eximirle de cumplir con su**

---

[152] Íd., sec. 164:8 pág. 164-16. Las fianzas emitidas en el caso de autos contemplaban la responsabilidad solidaria entre el contratista y El

responsabilidad ante la Sala del Tribunal de Primera Instancia donde se presentó la demanda por incumplimiento de su obligación contractual, en cobro de dinero y daños y perjuicios.

La sección 164: 101 de <u>Couch on Insurance 3d</u>[153] establece que la insolvencia de un contratista de construcción no constituye una defensa para la fiadora que impida que se le reclame judicialmente su responsabilidad por el dueño de la obra. No vemos como la misma situación a la inversa amerite trato diferente. ¿Por qué una persona natural o una persona jurídica, que no es una compañía aseguradora, puede acogerse automáticamente a la protección que provee el Capítulo 40 del Código de Seguros, <u>supra</u>, cuando el proceso administrativo activado ante el Comisionado de Seguros, por orden de la Sala Superior del Tribunal Primera Instancia con jurisdicción y competencia sobre el asunto, es relativo a los activos de una compañía de seguros y no va dirigido contra los activos de éste?

El procedimiento contemplado en el Capítulo 40 del Código de Seguros, <u>supra</u>, es un procedimiento análogo al proceso de quiebra instituido en al ámbito federal en cuanto a su propósito y funcionamiento.[154] <u>**Williston on Contracts, Fourth Edition**</u>, en su sección 36:21, establece lo siguiente:

> **For purposes of the rule that a judgment in favor of a person having a purely individual defense does not discharge the others from their obligation,** bankruptcy is regarded as a defense applicable only to the person who has been discharged. More specifically, the Bankruptcy Code provides as a general rule that discharge of a debt of the debtor does not affect the liability of any other entity with respect to the debt, or the property of any other entity liable for such debt".[155] **(Énfasis nuestro.)**

---

Fénix de Puerto Rico ante el dueño de la obra.

[153] Íd., pág. 164-88.

[154] <u>In re Advanced Cellular Systems</u>, <u>supra</u>.

**La sección 36:35, <u>supra</u>, añade lo siguiente:**

... For instance, there is considerable authority that a judgment in favor of a person having an individual defense, such as bankruptcy, lack of capacity, or the statute of limitations, does not discharge the other parties to the contract from their obligation, ...[156] **(Énfasis nuestro.)**

**Este Tribunal acogió esa posición en <u>Cámara Insular Etc. v. Anadón.</u>[157] En esa ocasión se estableció que la responsabilidad de un codeudor, fiador o garantizador solidario de un quebrado para con la reclamación judicial del acreedor no se altera por la adjudicación en quiebra del quebrado. Esto responde a que, de ordinario, la iniciación de un pleito de quiebra constituye una** defensa personal **que únicamente puede levantar ese deudor. Dicho procedimiento no beneficia al codeudor. En esa ocasión establecimos que un acreedor de un quebrado puede comparecer dentro del procedimiento de quiebra, probar su reclamación, recibir la parte proporcional que se adjudique a los acreedores y entonces dirigir contra el fiador (deudor) solidario la acción por el balance de la deuda del quebrado. Añadimos que la reclamación de un acreedor dentro de un procedimiento de quiebra ante la Corte de Distrito de Estados Unidos para Puerto Rico contra la deuda principal no le impide ejercitar una acción ante el Tribunal de Primera Instancia de Puerto Rico contra el fiador (deudor) solidario, y sólo le incumbe a éste último probar la extinción total o parcial de la deuda.**

**Sostiene la Mayoría que "[a] la vez es trascendente destacar que nuestro Código de Seguros tampoco distingue entre el contrato de seguros (póliza) y el contrato de fianza a los fines del Art. 40.210 de dicho Código. Y como ya hemos explicado, esta disposición persigue**

---

[155] 12 <u>Williston on Contracts</u>, 4th ed., sec. 36:21, págs. 698, 699 (1990).

[156] Íd.

[157] 83 D.P.R. 375 (1961); <u>Cristy & Sánchez v. ELA</u>, 84 D.P.R. 234 (1961); <u>Santiago v. Ares</u>, 25 D.P.R. 481 (1917).

que los procedimientos de liquidación de una aseguradora se conduzcan en forma expedita, justa y ordenada ante el Comisionado de Seguros, quién [sic] está a cargo de la liquidación". [158]  Añade que "el Comisionado de Seguros, como liquidador, tiene la obligación de conocer e inventariar todos los activos y todas las obligaciones de la compañía aseguradora de que se trate". [159]  Puntualiza que "el liquidador debe tener una visión clara e integral de <u>todas las obligaciones</u> por las cuales habrá de responder el activo de la empresa". [160]  Expresa que "[e]l propósito claro de la ley es que todo proceso de liquidación sea atendido por una sola entidad con visión integral de toda la problemática respecto a la capacidad financiera (potencial económico para el pago de las obligaciones) de la aseguradora que se trate". [161]  Concluye que "es necesario que el Comisionado sea quién [sic] disponga en primera instancia de las reclamaciones contra la <u>aseguradora</u> y su <u>asegurado o fiado</u>, bien bajo la póliza de seguros o bajo un contrato de fianza, a los fines de que pueda decidir la forma en que serán pagadas aquellas reclamaciones que considere válidas, en la proporción que determine, tomando en consideración el todo de la empresa ("activos v. pasivos"), hacer las reservas necesarias para el pago de las mismas". [162]  (Énfasis nuestro.)

Expresa la Mayoría que de permitirse la continuación de los procedimientos judiciales en el caso de autos, y de mantenerse contra los demás codemandados, el contratista de construcción RYB Engineers

---

[158] Opinión Mayoritaria, pág. 24.

[159] Íd., pág. 25.

[160] Íd., págs. 25-26.

[161] Íd.

[162] Íd., pág. 27.

& Contractors, Inc. y el ingeniero Luis B. Torres Félix (fiados), surgirían resultados indeseados, contrarios a la política pública en que se asienta el estatuto en cuestión. Resalta, como resultado indeseado, que de resultar victoriosa la parte reclamante en el Tribunal de Primera Instancia en contra del contratista de construcción (fiado) tendría esta última que repetir contra la fiadora en caso de que no pueda cobrar del fiado, en cuyo caso el reclamante tendría siempre que recurrir al Comisionado de Seguros para obtener el pago total y/o parcial de la sentencia obtenida en el tribunal. Concluye que ello sujeta y expone a la parte reclamante (dueño de la obra) y al contratista fiado a múltiples procedimientos.

Añade la Mayoría lo siguiente:[163]

> No obstante lo expresado anteriormente, la avanzada etapa procesal ñeque [sic] se encuentra el presente caso, nos obliga a reconocer la facultad del tribunal con jurisdicción de acuerdo al Art. 40.040 del Código de Seguros, 26 L.P.R.A. §4004, previa audiencia al Comisionado de Seguros, para autorizar, a instancia de cualquiera de las partes, la continuación de la acción en el foro apelativo o ante cualquier otro foro judicial; siempre y cuando se demuestre que la continuación de la misma resulta en el mejor interés de la aseguradora y/o del reclamante, y que de así permitirse, ello no contraviene los fines públicos perseguidos por el estatuto de marrás [sic]. Webster v. Superior Court, *supra*; Bank of America v. Quakenbush, 66 Cal.Rptr.2d 81 (1997).
> No contamos con los elementos decisionales indispensables, ni estamos requeridos a hacer una determinación de tal índole en este momento, pero nada impide que se solicite autorización a la Sala competente del Tribunal de Primera Instancia con jurisdicción para que este caso prosiga su curso en el cauce judicial en lugar de ser remitido al cauce administrativo.

Somos de la opinión que es muy delicado y algo anticipado, dado el "caso y controversia" ante nos, expresar que de nuestro Código de Seguros se desprende la intención legislativa de no distinguir, a los efectos de un procedimiento administrativo para liquidar los activos

---

[163] Íd., págs. 29-31.

de una compañía aseguradora en estado de insolvencia, entre el contrato de seguros (póliza) y el contrato de fianza. Existen factores muy particulares en cada una de esas figuras jurídicas que podrían incidir sobre tal procedimiento. Por ejemplo, entre otros, en el contrato de seguros es el asegurador en estado de insolvencia quien está primariamente obligado al ocurrir la eventualidad y quien tiene que sufrir la pérdida. En los contratos de fianza esa misma compañía aseguradora está normalmente obligada en forma secundaria y tendría derecho a que el principal le indemnice por lo pagado. Sólo las circunstancias particulares presentes en otro "caso y controversia" nos permitiría apreciar la profunda complejidad técnica detrás del estatuto en cuestión, y el alcance de la política pública formulada por la Asamblea Legislativa en ese asunto. Aquí se trata fundamentalmente de auscultar, ¿cómo, bajo las circunstancias particulares del presente "caso y controversia", una fianza emitida por un asegurador que advino a estado de insolvencia incide sobre el procedimiento administrativo seguido ante el Comisionado de Seguros para liquidar sus activos?; ¿cómo se afectan las reclamaciones que tiene el dueño de una obra contra el contratista (fiado) y esa compañía aseguradora (fiador) ante ese procedimiento administrativo?; ¿interfiere sustancialmente la reclamación judicial del dueño de la obra contra el contratista (fiado) con tal procedimiento administrativo dirigido a liquidar los activos de la misma, a tal punto que los pueda agotar o desordenar?

El contrato de construcción es uno que genera unas obligaciones entre las dos partes que lo otorgan y suscriben. El contratista de la obra queda sujeto a cumplir cabal y totalmente con su terminación, y el dueño está obligado a satisfacer la totalidad del pago por tal cumplimiento al verificarse su entrega. Si se ofrece como garantía

del cumplimiento de las obligaciones del contratista, bajo ese contrato, una fianza de cumplimiento y de pago ("Payment and Performance Bond"), entonces este último contrato (fianza) resulta ser uno accesorio al contrato de construcción, que es el principal. La norma pautada por la Mayoría tiene el indeseado, impráctico y nefasto efecto de someter automáticamente la reclamación del dueño de la obra contra el contratista, por el incumplimiento de este último con sus obligaciones a tenor con el contrato de construcción (principal) al procedimiento administrativo ante el Comisionado de Seguros, cuando la compañía aseguradora que se obligó a garantizar tal cumplimiento mediante el contrato de fianza (accesorio) advenga a estado de insolvencia y esté sometida ante esa agencia a un procedimiento administrativo de liquidación. Este resultado es clara y definitivamente contrario a la política pública que se articula en el estatuto en cuestión. Veamos.

La posición de la Mayoría resulta en impedirle al dueño de una obra reclamarle judicialmente al contratista, por el incumplimiento de este último con lo que estaba obligado bajo el contrato de construcción, obtener una sentencia del Tribunal General de Justicia de Puerto Rico contra dicho contratista y ejecutarla sobre sus activos. Someter automáticamente esa reclamación, bajo las circunstancias particulares de este "caso y controversia", al procedimiento administrativo contemplado en el Código de Seguros de Puerto Rico, supra, sin una determinación a esos efectos del Tribunal de Primera Instancia, Sala Superior de San Juan, con jurisdicción y competencia sobre dicho procedimiento, apoyada sobre el interés público protegido por dicho estatuto, y a solicitud del Comisionado de Seguros, es una nefasta no sólo para la industria de la construcción, sino también para el renglón de negocios que comprende la otorgación de fianzas,

aplicables a las transacciones dentro de dicha industria, y que es parte de la industria de seguros.  Esto no fue el propósito ni la intención del legislador al formular política pública sobre la industria de seguros.

El procedimiento administrativo ante el Comisionado de Seguros cuando adviene a estado de insolvencia una compañía de seguros, es uno que va dirigido a la liquidación de los activos de esa empresa.  El adscribir, este Tribunal, a ese procedimiento administrativo reclamaciones que van dirigidas a obtener un dictamen que habrá de ser ejecutado sobre los activos de otra empresa, que no se dedica a ninguno de los renglones de negocios de la industria de seguros, y que no se ha demostrado ante la Sala Superior del Tribunal de Primera Instancia con jurisdicción y competencia sobre tal proceso que interfiera sustancialmente con la liquidación de los activos de la aseguradora en estado de insolvencia, por el hecho de que esa compañía aseguradora hubiese otorgado un contrato de fianza, que es de naturaleza accesoria y en el cual el reclamante no fue parte, es algo que no alcanza nuestra comprensión.[164]

El adscribir, la Mayoría, la obligación de presentar petición ante la Sala Superior del Tribunal de Primera Instancia, con jurisdicción y competencia para autorizar el procedimiento administrativo contemplado en el Código de Seguros, a cualquiera de las partes en el presente caso  "previa audiencia al Comisionado de Seguros", para de

---

[164] Si se determinara por la Sala Superior del Tribunal de Primera Instancia con jurisdicción y competencia, a solicitud del Comisionado de Seguros que la reclamación que tiene el dueño de una obra contra el contratista (fiado) afecta o interfiere sustancialmente con la liquidación de los activos de una compañía asegurada (fiadora) en estado de insolvencia, entonces esa Sala del Tribunal de Primera Instancia que autorizó, a tenor con el Código de Seguros de Puerto Rico, supra, el proceso de liquidación, podría emitir una orden prohibiendo, suspendiendo o hasta desestimando toda acción no sólo contra la fiadora en estado de insolvencia, sino también contra el fiado. Artículo 40.050 (1)(c) del Código de Seguros, supra.  Esa no es la situación del caso de marras.

esa forma poder proseguir con sus procedimientos judiciales ante el Tribunal de Circuito de Apelaciones es algo inaudito. Como mencionamos previamente la Orden emitida por la Sala Superior del Tribunal de Primera Instancia, a petición del Comisionado de Seguros, dirigida a activar tal procedimiento, no contiene dictamen alguno dirigido a desestimar o remitir la reclamación del dueño de la obra contra el contratista (fiado) al referido trámite administrativo ante el Comisionado de Seguros. No atinamos a comprender como se le puede adscribir tal obligación al dueño de la obra para continuar con los procedimientos judiciales contra el contratista (fiado) cuando no existe orden de la Sala Superior del Tribunal de Primera Instancia con jurisdicción y competencia que afecte o regule su interés propietario en forma alguna. Por imperativo constitucional, no podría intervenir de forma alguna esa Sala del Tribunal de Primera Instancia con el interés propietario que comprende la reclamación judicial del dueño de la obra contra el contratista (fiado) sin garantizarle la acepción procesal del derecho constitucional a un debido proceso de ley. Es al Comisionado de Seguros, como liquidador de El Fénix de Puerto Rico, a quien le corresponde la obligación de activar la correspondiente petición ante la Sala Superior del Tribunal de Primera Instancia con jurisdicción y competencia sobre el procedimiento administrativo autorizado ante sí para solicitar la remisión de la reclamación judicial del dueño de la obra contra el contratista (fiado) al trámite administrativo bajo su jurisdicción. Tiene que alegar y demostrar con prueba ante esa Sala del Tribunal de Primera Instancia, previa notificación de la petición y audiencia a las partes afectadas, cualquiera de las causas o razones de pedir contempladas por el Artículo 40. 050 (1) del Código de Seguros, supra. El curso de acción que toma

la Mayoría en el día de hoy es contrario a la letra clara del estatuto especial en cuestión y a la manifiesta intención legislativa.

De no poderse ejecutar una sentencia judicial obtenida por el dueño de la obra en el caso de autos contra el contratista de la construcción sobre los activos de este último, el primero no podría repetir la misma contra la fiadora, compañía de seguros insolvente, dentro del marco y alcance del procedimiento judicial por virtud del cual se dictó esa sentencia. Por imperativo del interés público plasmado en la política pública formulada con la aprobación del actual Código de Seguros de Puerto Rico, _supra_, la reclamación del dueño de la obra contra el garantizador (fiador) del contratista tiene que presentarse y tramitarse ante el Comisionado de Seguros como liquidador y estará sujeta a los requisitos, condiciones, limitaciones y restricciones impuestas por estatuto a tal proceso, que es uno dirigido sobre los activos de la compañía aseguradora insolvente (fiador). En otras palabras, una vez advenida a estado de insolvencia la compañía de seguros (fiador) que se comprometió a garantizar el cumplimiento de las obligaciones del contratista de la obra, la reclamación que pueda tener el dueño para exigir el cumplimiento de la garantía (fianza) tiene que tramitarse con arreglo al procedimiento administrativo de liquidación de los activos de esa compañía ante el Comisionado de Seguros, sujeto a la determinación de lo debido, créditos preferentes y la cantidad a satisfacerse, atendidos los activos y demás obligaciones del caudal en liquidación. Lo que haya cobrado el dueño de la obra del contratista directamente, ya sea judicial o extrajudicialmente, sólo beneficia el caudal (activos) sujeto a liquidación. O sea, reduce la obligación de la compañía aseguradora sujeta al procedimiento administrativo de liquidación. No obstante, bajo las circunstancias particulares de este "caso y controversia",

no podría perjudicarlo como parece afirmar la Mayoría en su análisis.[165]
Es menester puntualizar, que una vez desestimada la reclamación presentada ante el tribunal contra la compañía aseguradora, por advenir a estado de insolvencia y estar sometida al procedimiento administrativo de liquidación de sus activos ante el Comisionado de Seguros, por Orden de la Sala Superior del Tribunal de Primera Instancia con jurisdicción y competencia para ello, ésta no es parte codemandada ante la Sala Superior del Tribunal de Primera Instancia, junto al contratista (fiado) contra quien se dictó la sentencia. Dicho dictamen judicial no podría ejecutarse sobre ella, en esta última Sala del Tribunal de Primera Instancia, repetimos, por imperativo del interés público protegido por la política pública formulada en el Código de Seguros vigente en Puerto Rico.

Por todo lo antes expuesto, concluimos que los recursos de apelación presentados ante el Tribunal de Circuito de Apelaciones podían continuar su curso hasta su culminación final, mediante sentencia, contra las demás partes cuyos activos no quedaron sujetos por la Orden emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, al procedimiento administrativo diseñado para la liquidación de activos de una compañía aseguradora en estado de insolvencia. No se demostró por el Comisionado de Seguros ante la Sala Superior del Tribunal de Primera Instancia, con jurisdicción y competencia sobre el referido procedimiento, que la reclamación de autos presentada en contra del contratista (fiado) interfiriera

---

[165] De obtener alguna suma el dueño de la obra a través del procedimiento administrativo de liquidación ante el Comisionado de Seguros, éste último podría como administrador liquidador, repetir contra el fiado, y por ende, presentar la correspondiente reclamación en su contra ante la Sala Superior del Tribunal de Primera Instancia con competencia, a tenor con lo dispuesto en el Código de Seguros y sujeto a las limitaciones, condiciones y términos de sus disposiciones, atendida la política pública formulada sobre ese asunto.

sustancialmente con ese procedimiento y debía ser desestimada y remitida al trámite administrativo. No obstante, la acción o reclamación judicial de autos presentada contra una compañía de seguros que advino a un estado de insolvencia y, como consecuencia, produjo la activación del procedimiento administrativo ante el Comisionado de Seguros para la liquidación de sus activos, debe ser remitida a ese procedimiento, porque esa reclamación va dirigida a agotar los activos de la compañía aseguradora insolvente y podría desordenar su distribución.[166]

El Comisionado de Seguros tiene la potestad de continuar o presentar bajo las disposiciones del Código de Seguros cualquier acción judicial que tenga el potencial de aumentar los activos de la compañía aseguradora insolvente.[167] Dicha obligación de defender y activar dichas reclamaciones judiciales para proteger y conservar los activos de la compañía aseguradora insolvente, incluye la obligación de continuar con una apelación, cuando ese sea el caso.[168]

En el caso ante nos el Comisionado de Seguros no planteó ante el Tribunal de Circuito de Apelaciones su falta de jurisdicción para continuar con los recursos de apelación presentados ante sí, incluyendo el radicado por El Fénix de Puerto Rico. Planteo ese asunto por primera vez ante nos.


VII

Por los fundamentos antes expuestos, revocaríamos en parte la sentencia dictada por el Tribunal de Circuito de Apelaciones. Decretaríamos que la reclamación de los demandantes de autos contra

---

[166] 1 Couch on Insurance 3d, sec.6:5, págs. 6-11.

[167] Véase 26 L.P.R.A. sec. 4018 (l)(m); 1 Couch on Insurance 3d, sec.5:39, págs. 5-69.

**El Fénix de Puerto Rico debe ser remitida, y tramitada a través del procedimiento especial dispuesto en el Capítulo 40 del Código de Seguros de Puerto Rico, <u>supra</u>. Confirmaríamos la sentencia emitida por el Tribunal de Circuito de Apelaciones en cuanto a todos sus demás extremos.**

Efraín E. Rivera Pérez
Juez Asociado

---

[168] 1 <u>Couch on Insurance 3d</u>, págs. 5-73.